[Civ. No. 19930. Fourth Dist., Div. Two. Dec. 19, 1978.]

DORIS PAS et al., Plaintiffs and Respondents, v.
THOMAS KIRK HILL et al., Defendants and Appellants.

**COUNSEL**

Phillip R. Kimes for Defendants and Appellants.

Smaltz & Neelley, Allen L. Neelley and Gregory A. Wedner for Plaintiffs and Respondents.

**OPINION**

**KAUFMAN, Acting P. J.**—Defendants sought to exercise the due-on-sale clause in a deed of trust encumbering improved real property in Brea. Plaintiffs instituted this action to enjoin defendants from attempting to accelerate the due date of the unpaid balance of the trust deed loan and from taking steps to sell the property at trustee's sale and for declaratory relief. The trial court found that the transfer of title on account of which defendants were attempting to exercise the due-on-sale clause did not diminish or threaten to diminish defendants' security and that, therefore, defendants' attempt to enforce the due-on-sale clause constituted an unreasonable restraint on alienation. Accordingly, judgment was rendered enjoining defendants from giving any notice of sale or attempting to sell the trust property by exercise of the due-on-sale clause on account of the transfer of ownership of the trust property from Johnson House, a partnership, to Doris Pas.[1] The judgment also awards plaintiffs attorney fees of $3,500 and $413.60 costs.

[1]The judgment as entered is overly broad in that the injunction against giving any notice of sale or selling or attempting to sell the trust property through exercise of the due-on-sale clause is not restricted to the specific transfer of ownership in issue at trial. Accordingly, the judgment will be modified to restrict the injunctions to the transfer of ownership from Johnson House to Doris Pas.

Defendants appeal from the judgment contending that the court erred in enjoining exercise of the due-on-sale clause; that, although the promissory note contains a provision for the recovery of attorney fees, plaintiffs are not parties to the note and are not personally bound by the note's provisions and, therefore, are not entitled to recover attorney fees under Civil Code section 1717; and that the award of costs to plaintiffs was erroneous because plaintiffs did not file a cost bill as required by Code of Civil Procedure section 1033.[2] Defendants' contention that plaintiffs were not entitled to attorney fees is well taken. Their other contentions are not meritorious.

The trust property was originally owned by defendant Hill. In January 1974, he sold the property to Johnson House, a partnership in which Robert Cory and Norman Kort were the partners. Johnson House paid Hill $5,000 on the purchase price and for the balance of $30,000 executed a promissory note secured by a deed of trust on the property. Both the promissory note and deed of trust contained identically worded due-on-sale clauses.[3] The note provided that if action were instituted thereon, the debtor would pay "such sum as the Court may fix as attorney's fees." Both the note and deed of trust were executed on behalf of Johnson House by Kort and Cory in their capacity as partners.

Johnson House was having difficulty making the payments due on the note; its payments were almost invariably late. On September 26, 1974, Johnson House executed a quitclaim deed to the property to Doris Pas. Subsequently, the deed was delivered and it was recorded on October 7, 1974. The court found on substantial evidence that both Johnson House and Pas intended the transfer of title to Pas only as security for repayment of a $6,000 loan from Pas to Johnson House. However, defendants knew

[2]Defendants also contend there is no substantial evidence to support the findings of the trial court that the transfer of title enhanced defendants' security and that between January 23 and March 7, 1975, defendant Kimes was informed by plaintiff Gold that the quitclaim deed from Johnson House to Doris Pas was in reality given as security for the repayment of a $6,000 loan from Pas to Johnson House. Plaintiffs virtually concede that defendants' contention with respect to the latter finding is correct. However, as plaintiffs point out, neither of these findings is essential to the judgment, and it is well established that erroneous findings may be disregarded as surplusage if they are not essential to the judgment. (*Brewer* v. *Simpson,* 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289]; *American National Bank* v. *Donnellan,* 170 Cal. 9, 15 [148 P. 188].)

[3]They read: "If the Trustor sells, conveys or alienates the said property, or any part thereof, or any interest therein, any indebtedness or obligation secured hereby, irrespective of the maturity dates expressed therein, at the option of the holder hereof, and without demand or notice, shall immediately become due and payable."

nothing about the deed or the loan transaction at this point. Although the findings are far from clear as to this fact, it is asserted by defendants and apparently conceded by plaintiffs that at some point in time the quitclaim deed was treated by both Johnson House and Pas as an absolute conveyance, presumably because Johnson House was unable to repay the $6,000 loan.[4]

Prior to January 20, 1975, defendant Phillip R. Kimes, an attorney, became successor trustee under the deed of trust. On January 20, defendants issued a notice of breach and default and election to sell because of a default by Johnson House in the payment of principal and interest in the amount of $300 due December 28, 1974, and the failure to pay real property taxes in the amount of $290.85 due December 10, 1974, and a resulting tax penalty of $17.45.

On January 23, plaintiff Robert N. Gold, also an attorney, on behalf of plaintiff Doris Pas, transmitted to defendants a cashier's check in the amount of $768.22, in payment of the delinquent principal and interest, late charges, the delinquent real property taxes and tax penalty, a trustee's fee and a recording fee. Thereupon, the pending foreclosure proceedings were cancelled.

Either in connection with the foregoing payment or a few days later defendants learned of the quitclaim deed from Johnson House to Pas. A letter from plaintiff Gold's secretary to defendant Kimes on January 23, 1975, and a letter from plaintiff Gold to defendant Kimes dated March 12, 1975, would appear to indicate that by January 23 the quitclaim deed had become absolute for they refer to a transfer of "ownership" and Pas having "succeeded to title after Johnson House defaulted on a loan made by Pas to Johnson House." In any event, on March 7 and March 10, 1975, respectively, defendants issued a notice of breach and default and election to sell based on the conveyance of title to Pas by the quitclaim deed, and a demand for payment of the full unpaid balance of the promissory note in the amount of $29,304.38 together with accrued interest, purporting to exercise the due-on-sale clause.

In the meantime, on March 6, 1975, plaintiff Pas conveyed title to the trust property to herself and plaintiff Gold as tenants in common.

---

[4]Pas was to receive a 10 percent interest in the property in lieu of interest on the loan anyway.

Pas refused to pay the accelerated balance of the loan and instituted this action. Also named as plaintiffs were Gold and Kort and Cory doing business as Johnson House, a partnership. Hill was named defendant as beneficiary under the deed of trust and holder of the promissory note. Kimes was named as defendant in his capacity as successor trustee under the deed of trust. Prior to trial, Kort and Cory, doing business as Johnson House, filed a request for dismissal of the action without prejudice and were dismissed. Pas and Gold are the remaining plaintiffs and have been and will continue to be referred to as the plaintiffs.

All payments due under the promissory note and deed of trust after January 23, 1975, have been made by plaintiffs and accepted by defendants without prejudice to their right, if any, to enforce the due-on-sale clause as a result of the conveyance from Johnson House to Pas.

*Exercise of Due-on Clause*

Having found that the quitclaim deed from Johnson House to Pas was intended as a security interest rather than an absolute conveyance at inception, the trial court apparently treated the transaction as the creation of a junior encumbrance. It concluded, nevertheless, that the transfer of title was sufficient to trigger the due-on-sale clause. It found, however, that defendants' security was neither impaired nor threatened with impairment by the transaction, and, relying on *La Sala* v. *American Sav. & Loan Assn.*, 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], dealing with a due-on-encumbrance clause, it concluded that defendants' attempt to exercise the due-on-sale clause constituted an unlawful restraint on alienation.

In view of the fact that the quitclaim deed was subsequently treated by the parties as an absolute conveyance, apparently prior to January 23, 1975, and well before defendants attempted to exercise the due-on-sale clause, the transaction is more appropriately viewed as an absolute conveyance in satisfaction of a junior encumbrance in lieu of foreclosure.[5] Arguably, this would bring the case within the ambit of *Hellbaum* v. *Lytton Sav. & Loan Assn.*, 274 Cal.App.2d 456, 458-459 [79 Cal.Rptr.

---

[5]If no more was involved than the creation of a junior encumbrance, there would be a substantial question whether the transaction would trigger the due-on-sale clause which on its face, at least, does not purport to be a due-on-encumbrance clause (see fn. 3, *ante*).

9], and *Cherry* v. *Home Sav. & Loan Assn.,* 276 Cal.App.2d 574, 580 [81 Cal.Rptr. 135], holding, and *Coast Bank* v. *Minderhout,* 61 Cal.2d 311, 315-317 [38 Cal.Rptr. 505, 392 P.2d 265], indicating that, in the event of an outright sale involving both change of ownership and possession, a due-on-sale clause could be lawfully exercised even in the absence of a showing of impairment or threat of impairment to the security. Of course, the recent decision of the California Supreme Court in *Wellenkamp* v. *Bank of America,* 21 Cal.3d 943, 953 [148 Cal.Rptr. 379, 582 P.2d 970], expressly disapproved *Hellbaum* and *Cherry*[6] and overruled *Minderhout* to the extent inconsistent with *Wellenkamp.* However, in *Wellenkamp* the court expressly limited its holding to the exercise of a due-on clause by an institutional lender. (21 Cal.3d at p. 952, fn. 9.) In the case at bench the holder of the note and deed of trust is an individual, not an institutional lender. Moreover, the note and deed of trust came into being not as a result of a loan transaction in the usual sense but as a result of the sale of the property by Hill to Johnson House, and the note represents the balance of the purchase price for the property. A decision that the holding in *Wellenkamp* applies to the case at bench would require serious consideration of these differences. ■ The problem need not be resolved in this case, however, for we have concluded that even though the transaction between Johnson House and Pas involved a change in both ownership and possession, inasmuch as the transfer was made in enforcement of the rights of a junior encumbrancer, the holding in *La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, viewed in light of *Tucker* v. *Lassen Sav. & Loan Assn., supra,* 12 Cal.3d 629, is controlling and the trial court's reliance on *La Sala* was sound.

The holding in *La Sala* was that the exercise of a due-on-encumbrance clause because of the creation of a junior encumbrance in the absence of a showing of impairment or threat of impairment to the security constituted an unlawful restraint on alienation. (5 Cal.3d at pp. 881-882.) We have concluded that notwithstanding certain dicta in the opinion, undermined in *Tucker* and repudiated in *Wellenkamp,* the holding of *La Sala* must be applied not only to the creation of a junior encumbrance but also to a subsequent transfer of ownership and possession in enforcement of the junior encumbrance, for, were a junior encumbrancer not permitted to foreclose on the security of the junior encumbrance without accelerating the unpaid balance of the senior indebtedness, few, if any, would choose to become junior encumbrancers.

---

[6]*Cherry* had been previously disapproved to the extent inconsistent in *Tucker* v. *Lassen Sav. & Loan Assn.,* 12 Cal.3d 629, 640 [116 Cal.Rptr. 633, 526 P.2d 1169].

Defendants quite properly point out that in the *La Sala* opinion the court expressly distinguished an outright transfer of ownership and possession from the creation of a junior encumbrance and expressly indicated that exercise of a due-on-encumbrance clause might be permissible if after a junior encumbrance were created, foreclosure should occur or loom imminent.[7] (5 Cal.3d at p. 880.) However, these statements of the court were no part of its holding, since the case actually involved only the creation of a junior encumbrance. Moreover, the court's statement that "[a] right to accelerate when foreclosure occurs, or looms imminent, would fully protect the lender" (see fn. 7, *ante*) must be read in light of the closely following statements of the court which persuasively indicate the court was not suggesting that the occurrence or imminency of a foreclosure of a junior encumbrance would *automatically* permit the senior encumbrancer to exercise a due-on clause. The court stated: "We recognize, however, as defendants point out, that instances may occur when the institution of a second lien does endanger the security of the first lien. . . . [¶] We conclude, then, in instances in which the borrower's *subsequent conduct endangers the lender's security,* the enforcement of the due-on-encumbrance clause may be *reasonably necessary* to protect the lender's interests. In many other instances, however, the clause serves no such purpose. . . . [¶] Yet defendants claim, in essence, that the lender should retain an *absolute* [italics in original] discretion to determine whether the transaction calls for enforcement of the due-on-encumbrance clause. Such an uncontrolled power, however, creates too serious a potential of abuse. . . . [¶] In view of these factors we cannot rule upon the validity of a due-on-encumbrance clause *in the abstract.* . . ." (5 Cal.3d at pp. 881-882; italics added.)

These principles were more fully developed in *Tucker* v. *Lassen Sav. & Loan Assn., supra,* in which the court's decision was expressly based on a

---

[7]Citing and quoting from the *Minderhout, Hellbaum* and *Cherry* cases, the court said: "The reasoning of these cases, while justifying enforcement of due-on-sale provisions clearly does not apply with equal force to restraints against future encumbrances. A sale of the property usually divests the vendor of any interest in that property, and involves the transfer of possession, with responsibility for maintenance and upkeep, to the vendee. A junior encumbrance, on the other hand, does not terminate the borrower's interests in the property, and rarely involves a transfer of possession. A junior lien does, of course, create a possibility of future foreclosure and thus of future transfer of possession. But the risk of future foreclosure—a risk which reaches fruition in only a minority of cases—cannot justify an endowment to a lender of an uncontrolled discretion to accelerate upon the making of a junior encumbrance. *A right to accelerate when foreclosure occurs, or looms imminent, would fully protect the lender.*" (5 Cal.3d at p. 880, fn. omitted; italics added.)

weighing of the quantum of restraint resulting from exercise of the due-on clause on the basis of the particular transaction involved against the justification for the exercise of the clause, reasoning that the greater the quantum of restraint, the greater must be the justification. (12 Cal.3d at p. 636; accord: *Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at pp. 948-949 et seq.) Finally in *Wellenkamp,* the court, utilizing this approach, repudiated the notion implicit in some of the language in *La Sala* and even *Tucker* that an outright sale involving both a change in ownership and change in possession would be sufficient in and of itself to authorize exercise of a due-on clause. (21 Cal.3d at pp. 951-952.) The court therefore concluded "that although circumstances may arise in which the interests of the lender may justify the enforcement of a due-on clause in the event of an outright sale, the mere fact of sale is not in itself sufficient to warrant enforcement of the clause, and the restraint on alienation resulting therefrom, in the absence of a showing by the lender that such circumstances exist." (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at p. 952, fn. omitted.)

Applying these principles in the case at bench makes clear the applicability of the holding in *La Sala.* Enforcement of the due-on-sale clause on the basis of the transaction between Johnson House and Pas in the case at bench would result in a greater quantum of restraint than would enforcement of a due-on clause in the case of the usual outright sale. Since the "sale" here involved was in reality a conveyance of the property in lieu of foreclosure of a junior encumbrance, upholding an exercise of the due-on-sale clause here without requiring justification would inhibit not only outright sales but also the making of loans secured by junior encumbrances on the property. As previously observed, if a junior encumbrancer is not permitted to foreclose and sell the property upon default in performance of the obligations secured by the junior encumbrance without accelerating the due date of the senior debt, few, if any, would choose to become a junior encumbrancer. Thus, exercise of the due-on-sale clause on the basis of the transaction between Johnson House and Pas in the case at bench would constitute a restraint upon alienation very much the same as that resulting from the exercise of the due-on-encumbrance clause in *La Sala* on the basis of the creation of the junior encumbrance. The trial court was correct, therefore, in concluding that exercise of the due-on-sale clause in the case at bench based on the transaction between Johnson House and Pas would constitute an unlawful restraint upon alienation in the absence of a showing that it was reasonably necessary to protect the security.

With respect to impairment of the security, the trial court found that defendants had not made any reasonable investigation of the credit worthiness of Doris Pas or Robert Gold prior to attempting to enforce the due-on-sale clause;[8] that defendants had not made any reasonable investigation as to whether Pas and Gold were laying waste to the property or whether the security of the deed of trust was in fact endangered by the transaction between Johnson House and Pas; that prior to their attempted enforcement of the due-on-sale clause the defendants possessed no knowledge of any fact reasonably susceptible to the interpretation that the security of the deed of trust was threatened because of waste or depreciation of the trust property or that the transfer of title in any way increased the risk that defendants would have to resort to the security on account of a default in performance of the obligation secured by the deed of trust; and that the transaction between Johnson House and Pas in no way impaired Hill's security.

These findings appear to be amply supported by the evidence, and defendants do not contend to the contrary. The only justification given at trial by defendant Hill for wanting to exercise the due-on-sale clause was that he "expected the property to be sold before the note went full term, and . . . wanted the cash to put into other investments." We conclude, therefore, that the trial court acted with propriety in enjoining defendants from enforcing the due-on-sale clause on the basis of the transaction between Johnson House and Pas.

*The Costs Award*

██ Code of Civil Procedure section 1033 provides in relevant part: "[T]he party in whose favor the judgment is ordered, and who claims his costs, must serve upon the adverse party, and file at any time after the verdict or decision of the court, . . . a memorandum of the items of his costs and necessary disbursements in the action or proceeding, which memorandum must be verified by the oath of the party, or his attorney . . . stating that to the best of his knowledge and belief the items are correct, and that the disbursements have been necessarily incurred. . . . A party dissatisfied with the costs claimed may, within 10 days after the service of a copy of the bill of costs, file a motion to have the same taxed by the court . . . ." It is conceded that plaintiffs filed no cost bill, and defendants rely on *Oak Grove School Dist.* v. *City Title Ins. Co.,* 217

---

[8]Since defendants' attempt to enforce the due-on-sale clause was based on the quitclaim deed from Johnson House to Pas, not the conveyance of Pas to herself and Gold as tenants in common, it would appear that the findings as they relate to Gold in his personal capacity are surplusage, but neither party makes any point of this.

Cal.App.2d 678, 697 [32 Cal.Rptr. 288], stating that a party who fails to file a cost bill in compliance with the statute "is deemed to have waived the costs accruing in his favor." That is certainly the general rule, but it has no application in the case at bench.

After the court had indicated its intention to rule in plaintiffs' favor on the issue of enforcement of the due-on-sale clause, plaintiffs, contending they were entitled to an award of attorney fees, moved to reopen to put on evidence of the extent and value of the services of their attorney. The motion was granted and plaintiffs' attorney was sworn and testified by giving a narrative statement. In pertinent part, he stated: "In addition to the time which I have suggested to the Court, I do have costs which are itemized. The total amount of my costs is $413.60, consisting of filing fees, the service of temporary restraining order which required a very extensive stake-out, and the depositions of the two plaintiffs and the defendant [Hill]." After a few more sentences, the narrative statement ended. Defendants were invited to cross-examine, but they declined. They did, however, present argument. These proceedings were had on December 22, 1976. Although we find nothing in the record concerning it, defendants state in their opening brief that on December 23, 1976, the court "awarded attorneys' fees of $3,500.00 and costs of $413.60 in favor of Plaintiffs against Defendants." There ensued considerable wrangling over the findings of fact and conclusions of law. The revised findings and conclusions and revised judgment were signed and filed January 9, 1978. The revised judgment included the awards of attorney fees and costs in the amounts indicated.

At no time during the hearing or in the more than one-year period after the court indicated on December 23, 1976, its intention of awarding costs in the amount of $413.60 did defendants object to the procedure employed or the amount of the costs claimed. At no time after the judgment was signed and filed was this problem brought to the attention of the trial court by defendants. Obviously, both plaintiffs and the court felt the purposes of Code of Civil Procedure section 1033 had been fully satisfied by the procedure employed and that defendants had acquiesced therein. Had the problem been brought to the attention of the trial court it would undoubtedly have had discretion to permit plaintiffs to file a belated memorandum of costs. (See *Pollard* v. *Saxe & Yolles Dev. Co.,* 12 Cal.3d 374, 380-381 [115 Cal.Rptr. 648, 525 P.2d 88]; *City of Salinas* v. *Souza & McCue Construction Co.,* 66 Cal.2d 217, 229.) Even on appeal, defendants do not contend that the costs claimed by plaintiffs were in any respect unjustified or excessive. Under these circumstances, defendants

must be said to have waived any irregularity. It is quite true that the motion to reopen made by plaintiffs did not specifically refer to their intention to present evidence concerning costs, but defendants were not misled. The quoted testimony concerning costs, said to have been itemized, was presented and defendants were given an opportunity to cross-examine. Moreover, according to defendants themselves, the very next day the court indicated its intention to allow costs in the amount of $413.60 and still defendants did nothing to manifest their dissatisfaction with the procedure or the amount claimed.

*Award of Attorney Fees*

Section 1021 of the Code of Civil Procedure reads in part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." ■ Accordingly, it is a settled rule of practice in this state that, other than in a limited number of situations not here involved (see *Serrano* v. *Priest,* 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]), a litigant may not recover attorney fees from the adversary party in the absence of a statutory provision or contractual agreement providing for such recovery. (*International Industries, Inc.* v. *Olen,* 21 Cal.3d 218, 221-222 [145 Cal.Rptr. 691, 577 P.2d 1031]; *Freeman* v. *Goldberg,* 55 Cal.2d 622, 625 [12 Cal.Rptr. 668, 361 P.2d 244]; *Reid* v. *Valley Restaurants, Inc.,* 48 Cal.2d 606, 610 [31 P.2d 473]; *Genis* v. *Krasne,* 47 Cal.2d 241, 246 [302 P.2d 289]; *Canal-Randolph Anaheim, Inc.* v. *Moore,* 78 Cal.App.3d 477, 485 [144 Cal.Rptr. 474].)

■ Plaintiffs' contentions that they were entitled to recover attorney fees and that the judgment awarding attorney fees is proper are based primarily on the attorney fee provision contained in the promissory note executed by Kort and Cory as partners of Johnson House in favor of Hill, coupled with section 1717 of the Civil Code enacted in 1968 (Stats. 1968, ch. 266, § 1, p. 578). The attorney fee provision in the note does not create reciprocal rights to recover attorney fees. It specifies only that Johnson House, the promisor, shall pay Hill reasonable attorney fees as fixed by the court in the event Hill should institute action on the note.[9] However, Civil Code section 1717 provides in relevant part: "In any action on a contract, *where such contract specifically provides that attorney's fees* and costs, which are incurred to enforce the provisions of

---

[9]It reads: "If action be instituted on this note, I promise to pay such sum as the Court may fix as attorney's fees."

such contract, *shall be awarded to one of the parties,* the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. . . . [¶] As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."[10] (Italics added.)

Defendants contend, however, that section 1717 has no application to the case at bench because the essential prerequisite to its applicability is lacking—there is no contract between plaintiffs Pas and Gold and defendants providing for the recovery of attorney fees by any of them. The point is well taken. Only Johnson House and its partners Kort and Cory and defendant Hill (and possibly defendant Kimes as trustee) were bound by the promissory note and deed of trust and obligated to perform the obligations provided for in those documents. Neither Pas nor Gold assumed the obligations of the promissory note or the deed of trust,[11] and accordingly neither of them was or is personally obligated to perform according to the terms of those instruments. "Upon the transfer of real property covered by a mortgage or deed of trust as security for an indebtedness, the property remains subject to the secured indebtedness but the grantee is not personally liable for the indebtedness or to perform any of the obligations of the mortgage or trust deed unless his agreement to pay the indebtedness, or some note or memorandum thereof, is in writing and subscribed by him or his agent or his assumption of the indebtedness is specifically provided for in the conveyance." (*Cornelison v. Kornbluth,* 15 Cal.3d 590, 596-597 [125 Cal.Rptr. 557, 542 P.2d 981].)

Plaintiffs assert it is not necessary to be a party to the contract to recover attorney fees under Civil Code section 1717, relying on *Babcock v. Omansky,* 31 Cal.App.3d 625 [107 Cal.Rptr. 512]. Insofar as the attorney's fee issue is concerned, the pertinent facts in *Babcock v. Omansky* were that the plaintiffs were attempting to establish the liability of the defendant wife on certain promissory notes on the theory that she was a joint venturer with her husband who had executed the notes. (31 Cal.App.3d at p. 628.) The notes contained a unilateral attorney fee provision such as the one in the case at bench. The defendant wife

---

[10]A paragraph omitted from the quote prohibits contractual waiver of the provisions of section 1717.

[11]At oral argument plaintiffs asserted that defendants treated plaintiff Pas as if she had assumed the obligations of the note by making demand upon her for payment of the full unpaid balance of the indebtedness. However, defendants by that time had been informed that ownership had been transferred to Pas and Pas had paid the amounts necessary to cure the earlier default. It was appropriate for defendants to demand payment from Pas even though she had not assumed the debt since it was her property that was going to be foreclosed.

prevailed *on all causes of action ex contractu* and sought attorney fees under Civil Code section 1717. The trial court denied recovery of attorney fees to defendant wife. The Court of Appeal reversed, saying: "As the language of the statute expressly indicates, a party need not be a signatory to the contract in order to recover attorney's fees as the prevailing party—as such prevailing party he becomes entitled to fees 'whether he is the party specified in the contract *or not.*' . . ." (31 Cal.App.3d at p. 633; italics in the orig.)

We agree it is not necessary to be a *signatory* to the contract to recover attorney fees under section 1717. However, as we recently explained in *Canal-Randolph Anaheim, Inc.* v. *Moore, supra,* we disagree with the *Babcock* court to the extent it interpreted the statutory language "the prevailing party, whether he is the party specified in the contract or not" as referring to a party to the litigation who was not a party to the contract or who was not at least claimed by the adversary party to be a party to the contract or obligated by its terms (see text preceding fn. 12, *infra*). Repeating our explanation in *Canal-Randolph,* the introductory clause in section 1717 establishes the predicate for applicability of the section, to wit, a contract between the parties providing for recovery of attorney fees by only one of them. The language "the party specified in the contract" refers to the party to the contract entitled by the terms of the contract to recover attorney fees should he or she prevail. "[T]he prevailing party, whether he is the party specified in the contract or not" means the party to the contract who prevails in the action whether or not he or she is the party entitled by the terms of the contract to recover attorney fees. In both cases the reference is to a party to the contract. (78 Cal.App.3d at pp. 485-486; accord; *Arnold* v. *Browne,* 27 Cal.App.3d 386, 398-399 [103 Cal.Rptr. 775]; *Boliver* v. *Surety Co.,* 72 Cal.App.3d Supp. 22, 28-29 [140 Cal.Rptr. 259].)

The legislative intent in enacting section 1717 was discussed in Review of Selected 1968 Code Legislation (Cont.Ed.Bar) at pages 35-36: "To secure a basis for recovering fees of counsel in contract litigation, parties dictating the contract terms have routinely required an attorney's fee clause. If a dispute developed over the contract, the party not having the benefit of the clause found himself at a serious disadvantage. If, for example, a lessee was wrongfully billed for damage to the premises, he faced a choice between settlement on the lessor's terms or litigation in which he would have to pay the legal expenses of both sides if he lost, but would receive no reimbursement of his expenses if he won. [¶] Section 1717 *was* enacted to make *all parties to a contract* . . . equally liable for

attorney's fees . . . . An attorney's fee clause is made reciprocal [by § 1717] if it does not otherwise benefit all parties." (Italics added.) (See *System Inv. Corp.* v. *Union Bank,* 21 Cal.App.3d 137, 163 [98 Cal.Rptr. 735]; see also *Coast Bank* v. *Holmes,* 19 Cal.App.3d 581, 596-597 [97 Cal.Rptr. 30].)

Thus, the purpose of the Legislature in enacting section 1717 was to make a unilateral attorney fee provision in a contract reciprocal and enforceable by each party to the contract even though the provision was not inserted in the contract for his or her benefit. (See *International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d at p. 223; *Canal-Randolph Anaheim, Inc.* v. *Moore, supra,* 78 Cal.App.3d at pp. 485, 486; *Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.,* 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782]; *Arnold* v. *Browne, supra,* 27 Cal.App.3d at p. 398; *Coast Bank* v. *Holmes, supra,* 19 Cal.App.3d at pp. 596-597; *Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. at p. 28.) Its purpose was not to extend the benefit of a contractual provision for the recovery of attorney fees to a person not a party to the contract, not obligated by the contract, and liability against whom was not sought on the basis of the contract (see text preceding fn. 12, *infra*). (*Canal-Randolph Anaheim, Inc.* v. *Moore, supra,* 78 Cal.App.3d at p. 486; *Arnold* v. *Browne, supra,* 27 Cal.App.3d at pp. 398-399; *Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. at pp. 28-29.)

We do not disagree with the result in *Babcock*. In our view the key to that decision is that the plaintiffs who were parties to the promissory notes pleaded and attempted to prove that the defendant wife was a party to the notes or liable on the notes as a joint venturer and *had the plaintiffs prevailed on that cause of action, the plaintiffs would have been entitled to an award of attorney fees against the defendant wife under the notes' unilateral attorney fee provisions.* The decision according the defendant wife the reciprocal right to recover attorney fees when she successfully defended by proving she was not a joint venturer was required by fairness and was wholly consonant with and in furtherance of the legislative purpose behind Civil Code section 1717. Although that question is not now before us, we think it likely a sound basis for the decision in *Babcock* can be predicated on the doctrine of equitable estoppel—e.g., the plaintiffs having alleged and attempted to prove the defendant wife was a party to the notes as a joint venturer and that she was liable under the

notes' attorney fee provisions and having caused defendant wife to defend against such liability, were estopped to deny defendant wife was a party to the contract for the remedial purposes of Civil Code section 1717. (See Evid. Code, § 623;[12] cf. Civ. Code, §§ 1589,[13] 3521;[14] also cf., e.g., *McManus* v. *Montgomery,* 12 Cal.2d 397, 400 [84 P.2d 787]; *Fawkes* v. *Farm Lands Invest. Co.,* 112 Cal.App. 374, 382 [297 P. 47]; *Cullinan* v. *Mercantile Trust Co.,* 80 Cal.App. 377, 384 [252 P. 647].)

In the case at bench, of course, unlike the situation in *Babcock,* the defendants were not attempting to establish the liability of plaintiffs Pas or Gold under the promissory note; they were seeking to sell the property at a trustee's sale pursuant to the deed of trust encumbering the property (see *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at pp. 596-597). Defendants' answer to the complaint did contain a request for attorney fees in the prayer, but the answer was filed prior to the dismissal as plaintiff of Johnson House which was a party to the promissory note and deed of trust and thus a party against whom defendants were entitled to reasonable attorney fees if they prevailed. It is true perhaps that defendants asserted at trial that they would be entitled to recover attorney fees if they prevailed, but they neither pleaded nor attempted to prove that plaintiffs were legally liable under the promissory note, and since neither Pas nor Gold was personally bound to perform the obligations of the promissory note or deed of trust, defendants would not have been entitled to recover attorney fees from them had defendants prevailed. (*Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. at p. 29; see *Canal-Randolph Anaheim, Inc.* v. *Moore, supra,* 78 Cal.App.3d at p. 486.) Thus neither fairness nor the legislative purpose behind Civil Code section 1717 requires that plaintiffs be permitted to recover attorney fees from defendants. (See *Canal-Randolph Anaheim, Inc.* v. *Moore, supra.*) The purpose of section 1717 to make reciprocal unilateral contractual rights to recover attorney fees would not thereby be furthered; on the contrary, a unilateral right to recover attorney fees would have been created in favor of plaintiffs.

[12]Evidence Code section 623 reads: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

[13]Civil Code section 1589 reads: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

[14]Civil Code section 3521 reads: "He who takes the benefit must bear the burden."

Having concluded plaintiffs were not entitled to recover attorney fees under Civil Code section 1717 in the trial court, we necessarily conclude they are not entitled to recover attorney fees on appeal under the statute.

### DISPOSITION

The judgment is modified by deleting the award of $3,500 attorney fees to plaintiffs and by inserting the words "on account of the transfer of ownership of the trust property from Johnson House to Doris Pas" on page 2 in line 8 between the word "sale" and the word "based" and in line 25 between the word "action" and the word "based" (see fn. 1, *ante*). As so modified, the judgment is affirmed. The parties shall bear their own respective costs on appeal.

McDaniel, J., and Morris, J., concurred.

A petition for a rehearing was denied January 9, 1979.