[Civ. No. 21956. Fourth Dist., Div. Two. Aug. 10, 1981.]

HOWARD D. GARBER et al., Plaintiffs and Respondents, v.
FULLERTON SAVINGS AND LOAN ASSOCIATION, Defendant
and Appellant.

COUNSEL

Pitts, Covington & Kane and Carl L. Kane for Defendant and Appellant.

Fred Crane and Robert E. Boehmer for Plaintiffs and Respondents.

OPINION

KAUFMAN, Acting P. J.—The issue presented by this appeal is whether a state-chartered savings and loan association may validly exercise the due-on-sale clause in its trust deed encumbering residential real property on account of an involuntary sale of the property to satisfy a lien of the United States for unpaid taxes, in the absence of a showing that exercise of the due-on-sale clause is reasonably necessary to prevent impairment of the security or risk of default. We conclude that it may.

On June 4, 1973, Diversified Electric, Inc., a corporation, executed and delivered to Fullerton Savings and Loan Association (hereafter Fullerton Savings) a promissory note evidencing a loan in the amount of $116,000 made by Fullerton Savings to the corporation. Payment of the promissory note was secured by a deed of trust executed by the corpora-

tion, encumbering residential real property at 523 Peralta Hills Drive in Anaheim, California. The deed of trust named Fullerton Savings as beneficiary and contained a provision commonly referred to as a due-on-sale clause that provided: "Should all or any part of the property secured by this Deed of Trust be sold or conveyed, then the note hereby secured shall become immediately due and payable at the option of the beneficiary of said note."

On April 14, 1976, the encumbered property was sold at public auction by the Internal Revenue Service to James C. Crouse for the sum of $34,000 to satisfy a nonconsensual lien of the United States of America for delinquent taxes. On March 1, 1977, title to the property was conveyed to Crouse by a deed executed by the Acting District Director of Internal Revenue as the authorized delegate of the Secretary of the United States Treasury.

Contemporaneously, on March 1, 1977, Crouse deeded the property to plaintiffs Howard D. Garber and Jean R. Garber, pursuant to an agreement for purchase and sale entered into sometime previously. The agreed purchase price was $175,000 of which $65,000 was to be paid by the Garbers through escrow in cash.

Fullerton Savings did not learn of the Internal Revenue Service sale, the conveyance of the property to Crouse or the conveyance of the property by Crouse to plaintiffs until about March 1, 1977. Fullerton Savings offered to permit plaintiffs to assume the existing deed of trust obligation upon their agreement to an increase in the interest rate from the original 7-1/2 percent to 8-1/2 percent per annum and the payment of a loan fee of $109.82, 1/10th of 1 percent of the unpaid balance of the debt. Plaintiffs declined to assume the existing loan unless they were permitted to do so at no cost. Thereupon, Fullerton Savings gave notice of its exercise of the trust deed's due-on-sale clause on account of the transfer of the property from Diversified Electric, Inc. to Crouse through the Acting District Director of Internal Revenue. The unpaid balance of the debt not having been paid, on June 13, 1977, Fullerton Savings caused to be recorded a notice of default and election to sell the property at a trustee's sale.

On August 25, 1977, plaintiffs instituted this action for declaratory relief, injunction and compensatory and punitive damages. Ultimately plaintiffs abandoned their claims for injunctive relief and damages and moved for summary judgment on the count of their complaint seeking

declaratory relief. The trial court granted their motion and rendered summary judgment declaring that under *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], Fullerton Savings was not permitted to exercise the due-on-sale clause without showing that that was reasonably necessary to prevent impairment of its security or risk of default. Fullerton Savings appeals.

■ Fullerton Savings' argument is in essence that in *Wellenkamp* the court found the exercise of the due-on-sale clause would constitute an unreasonable restraint on alienation because it would substantially impede volitional sale of the property by the owner (21 Cal.3d at p. 950[1]); that only unreasonable restraints on alienation are invalid (*id.*, at p. 948; *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 316 [38 Cal.Rptr. 505, 392 P.2d 265] (overruled to the extent inconsistent by *Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at p. 953)); that in determining whether a particular restraint on alienation is unreasonable the quantum of the restraint must be weighed against the justification therefor (*Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at pp. 948, 949-953; *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169]); that the reasonableness of a particular restraint on alienation is to be determined from the facts of the particular case (see *Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at p. 949; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113]); and that the quantum of restraint imposed by enforcement of the due-on-sale clause on account of the involuntary sale of the property to enforce a tax lien of the United States government is minimal or nonexistent and is fully justified by, if nothing more, the association's right to do business with persons of its own choosing, and, perhaps, its right not to do business with persons who have declined to agree to an assumption agreement that to Fullerton Savings appeared to be altogether reasonable.

---

[1]Stated the court in pertinent part: "When economic conditions are such that new financing is either unavailable or economically unfeasible, the seller and buyer will normally agree to a form of financing arrangement wherein the buyer will assume the seller's loan. In such circumstances, if the lender is unwilling to permit assumption of the existing loan, and instead elects to enforce the due-on-clause, transfer of the property may be prohibited entirely, because the buyer will be unable to substitute a new loan for the loan being called due, and the seller will not receive an amount from the buyer sufficient to discharge that loan, particularly when the balance due is substantial. [Citation.] Even when the lender is willing to waive its option to accelerate in return for the assumption of the existing loan at an increased interest rate, an inhibitory effect on transfer may still result. The buyer, faced with the lender's demand for increased interest, may insist that the seller lower the purchase price. The seller would then be

Plaintiffs do not argue the specifics of the particular transactions here involved. They point out that in *Wellenkamp* the court mentioned "[a] state policy that home equities are to be protected and conserved . . . ." (21 Cal.3d at p. 950, fn. 6 [see fn. 1, *ante*].) They urge that permitting the lender to exercise the due-on-sale clause in its deed of trust in the event of the sale of the property to foreclose a United States tax lien will discourage bidders and thus, to an unknown extent, tend not to "protect and conserve" the property owner's equity. They also rely heavily upon the decision of this court in *Pas* v. *Hill* (1978) 87 Cal.App.3d 521 [151 Cal.Rptr. 98], overruled on a separate point to the extent inconsistent by *Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309, 315 [168 Cal.Rptr. 552], and they urge that, historically, one of the purposes for prohibiting restraints on alienation was to protect creditors.

We agree with Fullerton Savings. It cannot be denied that the court in *Wellenkamp* did mention the state policy that home equities are to be protected and conserved, and, indeed, we believe that the decision we reach in this case will serve those ends.[2] But the fundamental rationale of the *Wellenkamp* decision was that automatic exercise of the due-on-sale clause would result in an unreasonable restraint on free alienation of the encumbered property. (21 Cal.3d at pp. 948-953.) It is well to ask, then, in attempting to apply *Wellenkamp* to the case at bench, what alienation of the property would be here restrained by exercise of the due-on-sale clause and, even more precisely, what "free" alienation of the property would be thus restrained. The answer is none.

Alienation of the property by virtue of the tax sale will not be restrained in any meaningful sense. We are informed that the Internal Revenue Service sets a minimum bid price and that if at least the minimum amount is not bid, the property is sold to the government. So the

---

forced to choose between lowering the purchase price and absorbing the loss with the resulting reduction in his equity interest,[6] or refusing to go through with the sale at all. In either event, the result in terms of a restraint on alienation is clear. [Citation.]" (21 Cal.3d at pp. 950-951, fn. 7 omitted.)

In footnote 6 of the quotation the court stated: "A state policy that home equities are to be protected and conserved is set forth in Health and Safety Code section 50007 (formerly § 41007)."

[2]Our holding that a due-on-sale clause may be exercised in the event of an involuntary tax lien sale will enhance the ability of the owner to preserve or realize upon at least a part of his equity, because by negotiating a sale of the property before the tax lien foreclosure, the owner will have the benefit of the *Wellenkamp* rule, whereas the tax lien seller will not have that advantage.

property would be sold one way or the other in any event. Thus the quantum of restraint (see *Wellenkamp v. Bank of America, supra,* 21 Cal.3d at p. 949) resulting from the right of the lender automatically to exercise the due-on-sale clause would be minimal as respects alienation of the property by the tax lien sale.

But the alienation by the tax lien sale is not the alienation we are truly concerned with. In *Wellenkamp,* had the trustee's sale been permitted to proceed, the property would certainly have been aliened, either by bid of the beneficiary of the deed of trust or by some third person. The alienation the *Wellenkamp* court said would be restrained was the volitional sale the owner would otherwise be able to make. (See 21 Cal.3d at pp. 950-951 [see fn. 1, *ante*].) Here there is no such volitional sale involved, and there is no potential for any restraint on free or volitional alienation, for if the owner had sold or conveyed the property, *Wellenkamp* would apply.

We detect also that the reasonable expectation of the parties to the transaction in which the deed of trust was created may have played some part in the *Wellenkamp* decision. (See 21 Cal.3d at pp. 952-953 ["purpose for which the due-on clause was legitimately designed, namely to protect against impairment to the lender's security ...." citing, Note, *Judicial Treatment of the Due-On-Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability* (1975) 27 Stan.L.Rev. 1109, 1117].) The due-on-sale clause is generally included in trust deeds expressly for the protection of the security (*id.*), and it would not be unreasonable for the borrower to expect that the clause would only be exercised if the sale or conveyance would result in a greatly increased risk of default or impairment of the security. (See *Holiday Acres No. 3* v. *Midwest Federal Savings and Loan Association of Minneapolis* (Minn. 1981) 308 N.W.2d 471, 481.) Here, however, it is not the borrower who complains of the exercise of the due-on-sale clause, nor even one succeeding to ownership by virtue of a consensual transaction with the borrower. Here the party complaining stands in the shoes of a tax lien sale purchaser who had no consensual relationship to either party and who is unrelated to the debt or the security instrument. May a tax lien sale purchaser reasonably expect to purchase the property at a forced-sale price and also have his purchase financed at a rate of interest grossly below the market rate by a financial institution which is to him a legal stranger? We believe not.

As our analysis should make plain, plaintiffs' reliance on our decision in *Pas* v. *Hill, supra*, 87 Cal.App.3d 521, is misplaced. In that case we held that a deed given in lieu of foreclosure of a junior encumbrance would not support the automatic exercise of a due-on-sale clause in the senior security. (*Id.*, at pp. 526-529.) Our decision in *Pas* flowed not so much from *Wellenkamp* as from *La Sala* v. *American Sav. & Loan Assn., supra*, 5 Cal.3d 864, viewed in light of *Tucker* v. *Lassen Sav. & Loan Assn., supra*, 12 Cal.3d 629. (See 87 Cal.App.3d at pp. 527-529.) *La Sala* held that automatic exercise of a due-on-encumbrance clause upon the creation of a junior encumbrance would constitute an unreasonable restraint on alienation, that is, on the alienation of a junior security interest in the property. (5 Cal.3d at pp. 881-882.) In *Pas* we reasoned: "Enforcement of the due-on-sale clause on the basis of the transaction . . . in the case at bench would result in a greater quantum of restraint than would enforcement of a due-on clause in the case of the usual outright sale. Since the 'sale' here involved was in reality a conveyance of the property in lieu of foreclosure of a junior encumbrance, upholding an exercise of the due-on-sale clause here without requiring justification would inhibit not only outright sales but also the making of loans secured by junior encumbrances on the property. As previously observed, if a junior encumbrancer is not permitted to foreclose and sell the property upon default in performance of the obligations secured by the junior encumbrance without accelerating the due date of the senior debt, few, if any, would choose to become a junior encumbrancer." (87 Cal.App.3d at p. 529.)

The point is that in *La Sala* and in *Pas* there was a "free" or volitional alienation of an interest in real property that would be restrained by exercise of the due-on clause, namely, the junior security interest. As previously pointed out, here there is no such "free" or volitional alienation to be restrained, and the rule prohibiting unreasonable restraints on the free alienation of property is therefore inapplicable.

The judgment is reversed.

McDaniel, J., and Morris, J., concurred.

A petition for a rehearing was denied September 1, 1981, and respondents' petition for a hearing by the Supreme Court was denied October 22, 1981. Richardson, J., was of the opinion that the petition should be granted.