[No. D015647. Fourth Dist., Div. One. June 10, 1993.]

SUPER 7 MOTEL ASSOCIATES, Plaintiff and Appellant, v.
KENNETH K. WANG, Defendant and Respondent.

**COUNSEL**

Jones, Hatfield, Penfield, Barden & Finegold and Thomas E. Polakiewicz for Plaintiff and Appellant.

Testa & Grady and James A. Testa for Defendant and Respondent.

**OPINION**

**FROEHLICH, J.**—The trial court awarded attorney fees to defendant Kenneth K. Wang (Wang) following his successful defense of the fraud complaint filed by Super 7 Motel Associates (appellant). Appellant claims the attorney fee award was improper. We agree.

### 1. *Facts*

Appellant sued numerous parties in connection with its purchase of certain property. Appellant's complaint alleged the seller (Westland Motel Associates) had engaged in fraud by failing to disclose certain information about the property. Appellant alleged that Wang, the real estate broker for seller, engaged in the same fraud. Appellant's lawsuit sought rescission or, alternatively, fraud damages.

Though appellant recovered damages against seller, Wang was acquitted of liability. Wang subsequently requested his attorney fees and costs. He claimed fees under paragraph 14 of the "Real Estate Purchase Contract and Receipt for Deposit," the document containing the terms of appellant's offer to purchase the property from seller. Paragraph 14 stated: "In any action or proceeding arising out of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs."

The document contained a separate section titled "Acceptance," which stated in part: "The undersigned Seller accepts and agrees to sell the property on the above terms and conditions. Seller has employed [Wang] as Broker and agrees to pay for services the sum of $100,000 [payable on certain conditions] . . . . In any action between Broker and Seller arising out of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs."

Following the "Acceptance" section was a line for seller's signature, and a space reading, "Broker[] agree[s] to the foregoing," followed by a line for broker's signature.

### 2. *Attorney Fees Are Recoverable Only If There Is a Contract Between the Parties Containing an Attorney Fee Clause*

Our analysis begins with a recognition of certain fundamental principles. ▉ Ordinarily attorney fees can only be awarded when the lawsuit (1) involves a claim covered by a contractual attorney fee clause (*Meininger* v. *Larwin-Northern California, Inc.* (1976) 63 Cal.App.3d 82, 84

[135 Cal.Rptr. 1]) and (2) is between the parties to that contract (*Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 485 [144 Cal.Rptr. 474]). The first issue (the claims issue) essentially involves interpreting the parties' contract, and requires the court to examine the language of the contractual clause to determine whether the nature of the claims asserted by plaintiff fall within the intended scope of the attorney fee clause. (*Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342-1344 [5 Cal.Rptr.2d 154].)

The second issue (the parties issue) also requires that we examine the operative contract to determine if the parties to the lawsuit were also parties to the attorney fee clause covering the disputed claims. In some cases, however, the parties issue also involves the reciprocity principles embodied in Civil Code section 1717, because under some circumstances a nonsignatory to the contract will be *deemed* entitled to the benefits of the attorney fee clause. (See discussion, *post*, at pt. 4.A.)

With these general principles in mind, we next evaluate the award of attorney fees here.

### 3. Not Having Been a Party to the Contract, Wang Is Not Entitled to Attorney Fees

The dispositive issue is whether Wang and appellant were parties to the contract containing the attorney fee clause. The relevant attorney fee clause, found at paragraph 14, is part of the purchase contract between appellant and seller, which contract specifies the obligations of each. ▮▮▮ We have examined the contract and conclude Wang was not a party thereto.[1] ▮ Although Wang was mentioned in the contract as the broker,[2] he had no contractual obligations or interest in the sale of the property. He was neither obliged nor able to convey title or otherwise satisfy the seller's obligations; he was not obliged to satisfy any of the buyer's obligations; and he had no contractual duty under the purchase contract to assist either party in discharging obligations under the contract.

Wang raises two theories under which he claims to be a "party" to the buy-sell contract. First, as a factual matter, he claims he was a party because he was required to sign the document. However, this claim overlooks the

---

[1]Because interpretation of a contract is a question of law and, on this record, is subject to de novo analysis (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1165-1166 [6 Cal.Rptr.2d 554]), we independently construe the contract to determine its scope and intent.

[2]The only mention of broker in the buy-sell portion of the contract is in paragraph 11. However, that provision merely contains buyer's and seller's consents to broker's reporting the financial details of the sale to members of broker's multiple listing service.

fact that the document is in two parts: the first part is the buy-sell agreement, to which Wang was a stranger; the second part is the broker's commission agreement, to which he was a contracting party. Wang's signature, found in the portion of the document addressing broker's commission, signifies his assent to the terms of that aspect of the document. (Accord, *Weber* v. *Dobyns* (1961) 193 Cal.App.2d 402 [14 Cal.Rptr. 103].) The lawsuit here did not arise from the broker's commission agreement, the only agreement to which Wang was a signatory.

■ Our conclusion that Wang was not a party to the buy-sell agreement is confirmed by construing the document according to certain rules of interpretation: A contract must be interpreted as a whole, with each clause aiding the interpretation in the attempt to give purpose to every part, and the interpretation should, where possible, give effect to every part so that no clause is redundant. (*Lawrence Block Co.* v. *Palston* (1954) 123 Cal.App.2d 300, 310 [266 P.2d 856].) ■ Under Wang's interpretation *the attorney fee clause in the commission agreement would become redundant and unnecessary* because were Wang a party to the buy-sell agreement, commission disputes arising from the buy-sell contract would fall within the more general attorney fee clause contained in paragraph 14.[3]

Wang alternatively argues he was a party to the contract as a matter of law because his entitlement to a broker's commission made him a third party beneficiary of the sale. This theory has two defects. First, even assuming a buy-sell contract automatically confers "third party beneficiary" status on the broker, Wang cites no authority suggesting a third party beneficiary has any right other than to collect the benefits the contracting parties agreed to confer on him. Indeed, the basic premise underlying attorney fee clauses, i.e., a party is not liable for attorney fees unless he agrees to the clause, is inconsistent with Wang's theory, because a third party beneficiary does not participate in reaching the agreement. Wang's theory would have the third party beneficiary bound by an agreement to which he did not consent.

A second and more fundamental flaw in Wang's argument is that this particular buy-sell agreement does not confer "third party beneficiary" status

---

[3]Other language in the buy-sell contract supports our conclusion that paragraph 14's reference to "party" was intended to refer only to buyer and seller. First, the contract as a whole is focused on buyer and seller, with only a single inconsequential mention of broker. Second, the other contractual references to "parties" clearly focus on the buyer and seller: paragraph 13 discusses arbitrating any disputes "the parties" might have over buyer's deposit (a matter of no concern to broker); and paragraph 15 provides that any modifications or extensions of the contract must be in a writing signed by "the parties"; however, the parties (i.e., buyer and seller) certainly could modify their agreement without broker's signature. These clauses demonstrate broker is not a "party" within the contemplation of the buy-sell contract.

on Wang. In *Weber* v. *Dobyns, supra,* 193 Cal.App.2d 402, the court analyzed a document substantively identical to the document here, and concluded the broker was not a third party beneficiary of the buy-sell contract. In *Weber,* as here, the first part of a document contained the buyer's offer but no promise of payment to broker, yet the "acceptance" part of the document (signed by seller) contained the commission agreement. The *Weber* court concluded the document represented two distinct contracts: one between seller and buyer (the buy-sell contract) and one between seller and broker (the commission contract). Broker's rights derived from the latter agreement, and because the buy-sell contract contained no promise to pay broker, he was not a third party beneficiary of the buy-sell portion of the document. (*Id.* at pp. 406-408.)

 Wang cites numerous cases loosely describing the broker as a third party beneficiary of a buy-sell agreement; however, close examination of those cases shows they are either factually or legally inapposite.[4] In *Donnellan* v. *Rocks* (1972) 22 Cal.App.3d 925 [99 Cal.Rptr. 692], for instance, the broker was originally hired by the buyer, but the buy-sell agreement stated seller would pay the commission. When buyer reneged on the purchase, broker sued the buyer. Although the *Donnellan* court loosely used third party beneficiary language, it held the buyer's liability rested on an entirely distinct basis: Buyer, by hiring broker, impliedly promised to purchase the property if procured on acceptable terms, and therefore buyer could be *liable for breaching that implied promise.* Thus buyer's liability was premised on his direct contractual relationship, not on third party beneficiary rules.

We conclude that Wang was not a party to the contract, either factually or as a matter of third party beneficiary law, and hence cannot invoke the attorney fee clause.

### 4. *Wang Is Not Entitled to Attorney Fees Merely Because Appellant Named Wang as a Defendant in Its Causes of Action Seeking Rescission*

 Wang finally urges he is entitled to collect his fees because appellant named Wang, along with others, as a defendant in its causes of action seeking rescission. This fact gives rise to two related contentions. First, Wang argues that a plaintiff who sues the nonsignatory as if he were a party

---

[4]Several cases are factually dissimilar. Two of the cases cited by Wang (*Calhoun* v. *Downs* (1931) 211 Cal. 766 [297 P. 548] and *Lane* v. *Davis* (1959) 172 Cal.App.2d 302 [342 P.2d 267]), for example, involved buy-sell agreements which specifically contained a promise to pay the broker; under such circumstances "third party beneficiary" rules are applicable. Without such a promise, however, the mere fact that a seller will use the proceeds to pay the broker does not make the broker a third party beneficiary.

to the contract is estopped from denying the nonsignatory's right to fees. Second, Wang argues he could have been liable for a rescission judgment, which rescission is an action on the contract, and hence reciprocity requires he be accorded the benefits of the contractual clause.

## A. *Estoppel Does Not Apply*

Several cases hold that a plaintiff, having sued a nonsignatory on the contract as if the nonsignatory were a contracting party, becomes liable for fees when the nonsignatory prevails. Wang argues these cases premised their rulings on estoppel principles, i.e., the plaintiff, having sued the nonsignatory as if the nonsignatory were a party to the contract, is estopped from objecting to the fee award. However, the underlying rationale of those cases does not aid Wang. Those cases involved lawsuits in which the plaintiff's claim, if successful, would have established the defendant was *in fact liable* on the contract even though the defendant was nominally a nonsignatory. In *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83], for example, the plaintiff brought suit to collect a note signed by the corporation, suing individual defendants on an alter ego theory. The *Reynolds* court recognized that the individual defendants, though nonsignatories to the note, would have been liable for attorney fees had plaintiff prevailed in establishing alter ego liability. Accordingly, the demands of reciprocity under Civil Code section 1717 required that such section be "interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds, supra,* at p. 128.)

Thus, contrary to Wang's contention, *Reynolds* and similar cases[5] do not rely on estoppel. While *Manier* v. *Anaheim Business Center Co., supra,* 161 Cal.App.3d 503 and *Pas* v. *Hill* (1978) 87 Cal.App.3d 521 [151 Cal.Rptr. 98] suggested estoppel was the basis for the nonsignatory's right to fees, the court in *Leach* v. *Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295 [230 Cal.Rptr. 553] convincingly explained these cases should be disregarded. First, *Manier* relied on *Pas,* but *Pas* was subject to extensive

---

[5]Thus, in *Babcock* v. *Omansky* (1973) 31 Cal.App.3d 625 [107 Cal.Rptr. 512], the prevailing nonsignatory had been sued on the allegation she was the partner or co-adventurer on the contract, and the court held she was entitled to fees because she would have been exposed to contractual liability had "co-adventurer" liability been shown. In the other cases cited by Wang, attorney fees were awarded based on a similar rationale: the plaintiff would have been entitled to collect the fees had he prevailed, and hence reciprocity demands the prevailing defendant be accorded the same right. (See, e.g., *Manier* v. *Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503, 505-507 [207 Cal.Rptr. 508] [defendant, having established contract was unenforceable, was awarded fees because plaintiff would have been entitled to fees had he shown contract was enforceable]; *Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701 [126 Cal.Rptr. 761] [same].)

criticism and ultimately was overruled by the *Pas* court itself. More importantly, *Leach* explained that "estoppel" is inconsistent with the *Reynolds* requirement that the nonsignatory show the plaintiff would *actually* have been entitled to fees. (185 Cal.App.3d at pp. 1306-1307.)

Since the crucial issue here is not merely estoppel, but is whether Wang could actually have been held liable for fees on the contract, we must examine Wang's related contention that he could have been liable for attorney fees as part of the rescission judgment.

### B. *Wang's Liability Was Premised in Tort Rather Than Contract*

■ We preliminarily note that an action for fraud seeking damages sounds in tort, and is not "on a contract" for purposes of an attorney fee award, even though the underlying transaction in which the fraud occurred involved a contract containing an attorney fee clause. (*Stout* v. *Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228].) However, where the plaintiff's claim instead seeks rescission based on fraud, the courts have concluded such claim does sound in contract and permits the award of fees. (*Hastings* v. *Matlock* (1985) 171 Cal.App.3d 826, 841 [217 Cal.Rptr. 856] [action to rescind purchase agreement is an action to enforce the agreement].)

■ Wang claims that because appellant sued him for rescission and he could have been held jointly and severally liable for the rescission judgment, and because the action was "on the contract," fees should be awarded. However, appellant's claim against Wang was not "on the contract," and appellant neither sought nor could have obtained rescission of the contract *against Wang.* The contractual aspects of a complaint seeking rescission of the contract and restitution of the benefits presuppose that plaintiff and defendant occupy the relationship of vendor and vendee. (*Leavens* v. *Sharp* (1944) 66 Cal.App.2d 425, 429 [152 P.2d 460].) In *Leavens,* buyer obtained rescission based on fraud, with a judgment representing a portion of the purchase price against the broker. The *Leavens* court reviewed numerous cases which consistently held a defrauded buyer could obtain either rescission of the contract against the seller (with a judgment for return of the purchase price) or a judgment in fraud for damages against the broker, but a buyer could not obtain a rescission judgment against a nonvendor of the property. (*Id.* at pp. 428-430.)

It is true, as Wang points out, that a broker is a proper party defendant to a fraud claim seeking rescission, and that the broker can be held jointly and severally liable for the consequential damage award in that action. (*Snelson*

v. *Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243 [84 Cal.Rptr. 800].) However, such liability is not premised on the contract. As the *Snelson* court explained, the 1961 amendments to the California Civil Code permitted a defrauded buyer to obtain both a rescission judgment (against the seller) and a judgment for consequential damages (jointly and severally against the broker and seller) in the same lawsuit. The *Snelson* court recognized, however, that the statutory changes were designed to allow a buyer to obtain consequential damages *in addition* to the rights accorded a rescinding party (e.g., restitution). The court stated: "It would appear not improper to hold all of the guilty defendants (who would be liable in an action for damages) jointly and severally liable on these [consequential] damages *as an ancillary remedy* to the principal remedy of rescission restoring plaintiffs to their status quo ante." (*Id.* at p. 254, italics added.) Thus, *Snelson* held the broker's liability in a rescission claim is a claim ancillary to the contractual claim against the vendor, and is premised in tort (i.e., fraud) rather than contract.

We thus conclude the broker's liability in a rescission claim springs from his own fraud, not from a contract to which he was not a party. Since a tort claim for damages carries no award of attorney fees (*Stout* v. *Turney, supra,* 22 Cal.3d at p. 730), Wang would not have been liable to appellant for fees, and hence Wang may not recover his fees under Civil Code section 1717.

## DISPOSITION

The order is reversed. Wang shall bear costs on appeal.

Kremer, P. J., and Todd, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 2, 1993.