[No. C050757. Third Dist. July 16, 2007.]

VINCENT P. LODUCA, JR., Plaintiff and Appellant, v.
GEORGE POLYZOS, Defendant and Respondent.

[No. C052481. Third Dist. July 16, 2007.]

VINCENT P. LODUCA, JR., Plaintiff and Respondent, v.
GEORGE POLYZOS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and II.

COUNSEL

Ellis, Coleman, Poirier, LaVoie & Steinheimer, Murphy, Pearson, Bradley & Feeney, Mark E. Ellis and Ronald R. Poirier for Plaintiff and Appellant and for Plaintiff and Respondent.

Fotouhi Epps Hillger Gilroy, Shahab E. Fotouhi and Wendy L. Hillger for Defendant and Respondent and for Defendant and Appellant.

OPINION

**NICHOLSON, J.**—In this construction litigation, a property owner, as a third party beneficiary, sued a subcontractor in contract and tort for breach of the contract between the subcontractor and the general contractor. The trial court granted judgment in favor of the owner on breach of contract, but against the owner on negligent misrepresentation. The trial court also denied the owner's request for prejudgment interest on the contract. However, the trial court granted the owner's motion for attorney fees pursuant to an attorney fee clause in the contract. Both the owner and the subcontractor appeal, the former on the judgment denying prejudgment interest and negligence liability, the latter on the order awarding attorney fees. We affirm the judgment and attorney fee order in their entirety.

## FACTS

In late 1998, plaintiff Vincent P. Loduca, Jr., began to develop property to build a custom home for him and his family. He retained MCM Builders (MCM) and its principal, Steve Mishler, to act as general contractor.

In early 1999, MCM solicited a bid from defendant George Polyzos, doing business as Quality Manufacturing Company (QMC), to manufacture and install custom cabinetry in the new home. Tony Xirouhakis, a QMC employee, prepared two bids for the project. After consulting with plaintiff, MCM accepted the bids. The signed bids became the written contract between QMC and MCM. (The parties refer to the bids as the 1539 bid and the 1539A bid.)

Under the agreement, QMC agreed to install extensive cabinetry in the new home for a total cost of $63,947.64. The contract required payments as follows: 50 percent of the cost as a downpayment, 30 percent upon delivery of the cabinets, and the last 20 percent upon completion of the installation.

The contract also included the following clause, typed in all capitals: "If a court action is brought, prevailing party to be awarded attorneys fees and collection costs, any unpaid balance subject to 18% interest annually."

QMC warranted the work would be completed "in a substantial workman-like manner according to standard practices . . . ." QMC also represented the project would take between two and three months to complete.

QMC received the first payment on the cabinets in March 1999, commencing the contract. By the end of August 1999, Loduca had paid approximately $51,000 to QMC, about 80 percent of the total purchase price. Some of these payments had been made by MCM, and others had been made directly from Loduca to Polyzos. The project, however, was not completed, and a number of components remained to be delivered.

By an agreement dated November 1, 1999, between Loduca and Xirouhakis acting for QMC, QMC agreed to deliver the remaining parts and Loduca agreed to pay $10,000 upon delivery. QMC agreed to complete installation by November 10, 1999, except for two components, including an entertainment center, which QMC agreed to deliver by November 19 and install by November 22, 1999. The parties agreed QMC would pay a penalty of $130 per day for every day after November 10 and November 22 in which the project is not completed due to delay caused by QMC.

When the goods arrived around November 2, Loduca gave Xirouhakis a check for $10,000. As he inspected the goods, however, he noticed the cabinet doors did not fit. Other ordered doors and parts were missing. He also learned from a QMC worker there was no entertainment center being constructed in QMC's shop. Loduca called his bank and stopped payment on the $10,000 check. In response, QMC filed a mechanic's lien against the project in the amount of $10,000.

On November 7, all of the cabinetry materials that had been delivered on November 2 along with other cabinetry materials that had not been fastened or nailed down were taken out of the house without Loduca's permission. Loduca and Mishler went to QMC's warehouse to see if they could recover the items. Although they could see some of the items, Xirouhakis would not allow access to the warehouse. QMC never completed the job.

Ultimately, Xirouhakis filed a complaint against Loduca for assault and battery. In 2000, Loduca filed a cross-complaint against Xirouhakis and Polyzos individually and as doing business as QMC alleging breach of contract, fraud, negligent misrepresentation, conversion, assault and battery, and intentional and negligent infliction of emotional distress. He also sought punitive damages, as well as prejudgment interest and attorney fees as provided in the contract.

The underlying complaint and the assault and emotional distress claims of the cross-complaint were compromised and dismissed. Loduca's cross-complaint with its remaining causes of action against Polyzos was designated as the complaint.

Loduca's claims were tried without a jury.[1] On the second day of trial, defense counsel stipulated that Polyzos had in fact breached the contract represented by the 1539 bid and the 1539A bid. Defense counsel also stipulated it would not rely on the November 1 agreement as a defense to Loduca's breach of contract claim.

Later in the trial, all counsel stipulated the total amount of contract damages was $40,000. This amount encompassed the amounts Loduca had paid to another entity thus far to finish the cabinets and the estimated amount Loduca would pay in the future to finish the cabinets. The stipulated amount did not include an award of prejudgment interest, as that issue was left for the court to decide.

Counsel also stipulated that if the court determined Loduca actually paid $10,000 to pay off the mechanic's lien and that this payment was consequential damage of the breached contract, the court would enter a finding to that effect.

The trial court entered judgment in favor of Loduca and awarded $65,000 in damages calculated as follows: the stipulated $40,000, plus $10,000 for satisfying the mechanic's lien, and $15,000 for interest Loduca paid on his construction loan that he would not have incurred but for the delays in work caused by QMC's breach.

The trial court denied Loduca's request for prejudgment interest at the rate of 18 percent based on the contract. The court determined the contract clause provided for interest on unpaid balances due QMC, not damage awards given to Loduca. Even if the clause applied to the judgment award, the court held the rate of 18 percent was usurious.

The court ruled Polyzos was liable for conversion, but determined no additional amount in damages was payable for this cause of action. The court held Loduca's claim for fraud was not established.

---

[1] Trial commenced in October 2004, after the federal district bankruptcy court granted Loduca relief from the automatic stay against debtor Polyzos, who by then had been discharged from bankruptcy.

As to negligent misrepresentation, the court stated Loduca had elected to accept the contract damages, thereby obviating the court's obligation to rule on the negligence claims. In any event, the court determined Loduca had failed to prove actionable misrepresentation or negligence.

At a subsequent hearing, the trial court awarded attorney fees to Loduca pursuant to the contract in the amount of $190,350.

Both parties appeal. In case No. C050757, Loduca claims the court erred by (1) denying prejudgment interest under either the contract or Civil Code section 3289; and (2) precluding his claim for negligence damages and finding there was no negligence. In case No. C052481, Polyzos claims the court erred by awarding Loduca attorney fees. We have consolidated the appeals and will resolve both in this decision.

## DISCUSSION

### I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

*Attorney Fees*

Polyzos appeals from the trial court's award of attorney fees to Loduca in the amount of $190,350. He claims Loduca was not entitled to the award as a third party beneficiary to the contract between himself and MCM. We disagree.

" 'On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law.' (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 [101 Cal.Rptr.2d 127].)

▉ "We start with the basic proposition that each party to a lawsuit must pay its own attorney fees except where a statute or contract provides otherwise. (Code Civ. Proc., § 1021.) Where there is a contractual attorney fees provision, [Civil Code] section 1717, subdivision (a) provides, '[i]n any

---

See footnote, *ante*, page 334.

action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.'

■ "[Civil Code] [s]ection 1717 was enacted to 'avoid the perceived unfairness of one-sided attorney fee provisions . . . .' (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1182 [101 Cal.Rptr.2d 532].) 'Its purposes require [Civil Code] section 1717 be interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant.' (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) [¶] . . . [¶]

" '[I]n cases involving nonsignatories to a contract with an attorney fee provision, the following rule may be distilled from the applicable cases: A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed.' (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 382 [30 Cal.Rptr.2d 536] [involving a nonsignatory plaintiff suing a signatory defendant in an action on the contract].)" (*Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 450, 451 [33 Cal.Rptr.3d 694].)

■ "A third party beneficiary may enforce a contract made expressly for his or her benefit. (*Kaiser Engineers, Inc. v. Grinnell Fire Protection Systems Co.* (1985) 173 Cal.App.3d 1050, 1055 [219 Cal.Rptr. 626]; Civ. Code, § 1559.) It is also true that a party not named in the contract may qualify as a beneficiary under it where the contracting parties must have intended to benefit the unnamed party and the agreement reflects that intent. (*Harper v. Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079, 1087 [66 Cal.Rptr.2d 64].) The party claiming to be a third party beneficiary bears the burden of proving that the contracting parties actually promised the performance which the third party beneficiary seeks. This remains largely a question of interpreting the written contract. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436 [204 Cal.Rptr. 435, 682 P.2d 1100].)" (*Sessions Payroll Managment Inc. v. Noble Construction Co., supra,* 84 Cal.App.4th at p. 680 (*Sessions Payroll*).)

Two reported cases are instructive. In *Sessions Payroll*, the Court of Appeal reversed an award of attorney fees to a defendant signatory against a losing plaintiff third party. A contract between a general contractor and a subcontractor included an attorney fee clause. The subcontractor hired the plaintiff to provide payroll services. The plaintiff would receive funds from the subcontractor, and from those funds would pay the subcontractor and its employees their wages and benefits. When the general contractor breached its agreement with the subcontractor, the plaintiff sued the general contractor for breach of contract and attorney fees. The trial court sustained a demurrer without leave to amend and awarded attorney fees to the general contractor. (*Sessions Payroll, supra,* 84 Cal.App.4th at pp. 674–677.)

The Court of Appeal stated the issue, under the principles of reciprocity imposed by Civil Code section 1717, was whether the plaintiff would have been entitled to attorney fees had it prevailed in enforcing the contracting agreement as a third party beneficiary. If so, the general contractor was entitled to fees against the plaintiff as the prevailing party. (*Sessions Payroll, supra,* 84 Cal.App.4th at p. 680.)

The court determined the plaintiff could not have recovered fees had it won the action because the underlying contract gave no indication the general contractor and the subcontractor intended to benefit the plaintiff by including it within the attorney fee clause. The contract stated it did not confer or create any rights or benefits upon third parties except as expressly stated. The attorney fee clause did not so expressly state. It applied in the event " 'it becomes necessary for *either party* to enforce' " the contract's provisions. (*Sessions Payroll, supra,* 84 Cal.App.4th at pp. 680–681, original italics.) The contract contained no express recognition of the plaintiff. (*Id.* at p. 681, fn. 1.) Thus, since the plaintiff could not have recovered fees had it won its breach of contract claim, the subcontractor could also not collect fees for successfully defending against that claim.

By comparison, the Court of Appeal in *Real Property Services* upheld an award of attorney fees to a signatory defendant who successfully defended a breach of contract claim brought by a third party beneficiary. In that case, a city entered into a lease agreement for the development and construction of a movie theater complex. The lease agreement included an attorney fee clause. Also in the lease, the city expressly consented to the developer subleasing the facility to Real Property Services (RPS). RPS was not a signatory to the lease. After construction faltered over financial issues, the city sought to terminate the lease, and the developer acquiesced in ending the

relationship. RPS sued the city for breach of contract and for attorney fees under the lease agreement between the city and the developer. After the trial court granted judgment in the city's favor, the city moved for attorney fees against RPS. (*Real Property Services Corp. v. City of Pasadena, supra,* 25 Cal.App.4th at pp. 377–378 (*Real Property Services*).)

The Court of Appeal upheld the award of fees to the city. It applied the reciprocity test and determined RPS could have recovered attorney fees under the city's contract with the developer as a third party beneficiary had it won its claim. Under established law, RPS was a third party beneficiary because the lessor had expressly agreed to a sublease. Thus, the Court ruled, "[w]here there is a sufficient nexus between the lessor and sublessee, a nonsignatory sublessee is entitled to enforce an attorney fee provision in the lease as a third party beneficiary against a signatory landlord." (*Real Property Services, supra,* 25 Cal.App.4th at p. 383.)

Even though the attorney fee clause applied to an action " 'brought by either party against the other party under this Lease' " (*Real Property Services, supra,* 25 Cal.App.4th at p. 377), the lease expressly provided RPS would be the sublessee who would operate the theater. The court determined this established a sufficient nexus between RPS and the city. The city was thus potentially liable for any breaches, including attorney fees, and RPS was also liable for attorney fees if it failed to prove the city breached the contract. (*Id.* at p. 383.)

We turn to interpret the language of the contract here in the light of these decisions. Polyzos does not dispute Loduca was a third party beneficiary to the contract. The contract expressly names Loduca in the reference line. It states the cabinetry was to be built according to plans developed for Loduca's home. Loduca obviously was an intended third party beneficiary.

The attorney fee clause in the contract reads as follows: "If a court action is brought, prevailing party to be awarded attorneys fees and collection costs . . . ." Unlike the clause at issue in either *Sessions Payroll* or *Real Property Services*, this clause makes no reference to a particular party to the contract bringing the suit. It simply states if a court action is brought, presumably on the contract, then the party that prevails in the action will be awarded fees. Nowhere does the contract impose any limitation on third party rights. Polyzos, who authored the contract, and MCM both understood Loduca to be the only intended beneficiary who could enforce the contract. Indeed, Polyzos accepted payment for his work directly from Loduca. A

closer nexus exists between Loduca and Polyzos than between the city and sublessee in *Real Property Services*. Under these circumstances, it is apparent Polyzos and MCM intended Loduca's enforcement right to include a right to attorney fees.

Polyzos raises a number of arguments against this conclusion. He first claims there is no mutuality of remedies as his sole remedy against Loduca was to file a mechanic's lien. This is incorrect. He could have sued on the contract instead of filing a lien, and in so doing, availed himself of the attorney fee provision. The parties having intended the fee provision to apply to Loduca, it also would have applied to Polyzos against Loduca had Loduca lost his claim. Moreover, Polyzos never foreclosed on his lien, which would have prevented him from seeking attorney fees.

■ Second, Polyzos argues Loduca could receive attorney fees under the contract only if MCM assigned the contract to him. The cases we have discussed above demonstrate a formal assignment is not required before an intended third party beneficiary can recover attorney fees on the underlying contract.

Third, Polyzos asserts the cases of *Whiteside v. Tenet Healthcare Corp.* (2002) 101 Cal.App.4th 693 [124 Cal.Rptr.2d 580] (*Whiteside*), and *Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541 [20 Cal.Rptr.2d 193] (*Super 7*), compel a different result. Both cases are distinguishable. In *Whiteside*, the plaintiff's group insurance policy carrier and a hospital had entered into an agreement under which the hospital would provide services to the group carrier's subscribers at a discounted rate. This agreement also contained an attorney fee clause. After the plaintiff's hospitalization, the hospital obtained reimbursement from the group carrier at the discounted rate, and from an individual policy held by the plaintiff to cover the difference between the discounted and regular rates. The plaintiff sued the hospital to recover the amounts paid by his individual policy carrier. The trial court granted summary judgment in favor of the hospital, and also awarded it attorney fees based on the hospital's contract with the plaintiff's group carrier. (*Whiteside, supra*, 101 Cal.App.4th at pp. 698–700.)

The Court of Appeal reversed the attorney fee award, concluding an insufficient nexus existed between the plaintiff and the hospital through the hospital's contract with the group carrier. In that contract, the hospital had agreed to arbitrate disputes between it and the carrier, but it expressly disclaimed any obligation to handle subscriber claims against it in any particular manner. (*Whiteside, supra*, 101 Cal.App.4th at pp. 708–709.) Thus,

there was no indication the hospital intended to extend its attorney fee agreement to the subscribers.

Here, there is a sufficient nexus. The contract contains no limitation by Polyzos on any rights that Loduca could derive from the contract. The attorney fee clause's broad language extends to any court action on the contract without reference to who may bring it. Since Loduca had paid Polyzos directly, Polyzos likely understood the party most likely to bring such a claim was Loduca.

*Super 7* also does not help Polyzos. There, the purchaser of real property sued the seller and the seller's broker for fraud in the transaction. He sought rescission or, alternatively, fraud damages. He recovered damages from the seller, but the broker was acquitted of liability. The broker subsequently requested attorney fees against the purchaser, relying on an attorney fee clause in the broker's contract with the seller. The trial court granted the broker's request. (*Super 7, supra*, 16 Cal.App.4th at p. 544.)

The Court of Appeal reversed the award of attorney fees. Although it rested its holding on the fact the broker was not a party to the contract, the court also held the broker was not a third party beneficiary to the contract, and any liability borne by the broker was premised in tort rather than contract. (*Super 7, supra*, 16 Cal.App.4th at pp. 546–547, 549–550.) Here, there is no dispute Loduca was the intended third party beneficiary, and his action was premised on the contract.

Lastly, Polyzos claims the absence of an attorney fee provision in the November 1 agreement between Loduca and him demonstrates the parties did not intend for Loduca to be able to recover fees. The November 1 agreement, however, does not state it is superseding the MCM-Polyzos agreement. It simply changes the terms of payment and imposes an additional penalty if delivery continues to be late regarding the same cabinets previously agreed to.

If anything, the November 1 agreement further suggests the parties intended the benefits and burdens of the earlier contract to apply directly to Loduca. The modification to the earlier agreement effectively made Loduca a party to the contract, thereby entitling and burdening him with the attorney fee provision.

Based on all of the above, we conclude the attorney fee provision applied to Loduca, and affirm the trial court's award of attorney fees.

## DISPOSITION

The judgment and the award of attorney fees are affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.276(a)(4).)

Blease, Acting P. J., and Morrison, J., concurred.

The petition of respondent George Polyzos for review by the Supreme Court was denied October 31, 2007, S155681.