Filed 8/19/14  Galligan & Biscay v. Galligan CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GALLIGAN & BISCAY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JOSEPH GALLIGAN et al.,<br><br>        Defendants and Respondents. | A138617<br><br>(San Mateo County<br>Super. Ct. No. CIV 509754) |

Galligan & Biscay (G&B) appeals from a judgment in favor of defendants Joseph Galligan and Maureen Pollard James[1] awarding $112,646.25 in contractual, prevailing party attorney fees to defendants following their successful motion for summary judgment.  We affirm the summary judgment in favor of defendants, but reverse the award of attorney fees to them.

## I.  BACKGROUND

### A. *The Prior Litigation*

On October 29, 2008, Joseph A. Galligan and Gail M. Galligan executed a trust declaration establishing The Joseph A. Galligan and Gail M. Galligan 2008 Living Trust (Trust).  Joseph died on July 16, 2010, leaving Gail as the sole trustee.  Gail resigned as

---

[1] Because this litigation involves multiple members of the Galligan family, some with the same surname, we refer to defendant siblings individually as Joe and Maureen, and to their brother Patrick by his surname, to avoid confusion, meaning no disrespect to the parties.

trustee on August 6, 2010, and Bruce Van Alstyne, the named successor trustee, consented to serve (trustee).  On September 5, 2010, Gail died.

The Trust provided that upon the deaths of Joseph and Gail, their estate would be divided for the benefit of six of their eight surviving children (including defendants Joe and Maureen) and four of their grandchildren, and specifically disinherited Joseph and Gail's other two children, Patrick and Timothy.

Joseph was a shareholder in G&B during his lifetime.  G&B was formed on or about August 31, 1976.  Under the terms of Joseph's pour-over will, his interest in the law firm was to be distributed to the trustee of the Trust upon his death.  The trustee was informed that in the years preceding Joseph's death, the firm had been informally winding down, with Joseph performing little, if any, legal work on client matters, and referring most active engagements to other attorneys.  By the time Joseph died, the trustee was informed, G&B was essentially a dormant law practice with little or no economic value.

In a letter to the trustee dated September 24, 2010, Patrick, an attorney, asserted he was a 50 percent owner of the firm.  To substantiate his claim, Patrick presented a copy of what purported to be a duly signed stock certificate, dated May 6, 1977, representing 100 shares of capital stock in the firm.  On February 15, 2011, the trustee filed a petition for instructions with the San Mateo County Superior Court (case No. 120876) seeking, among other things, guidance as to how to resolve Patrick's claims.  On March 4, 2011, Patrick filed an "Opposition and Joinder" to the petition, to which Maureen filed an opposition on March 14, 2011.  Maureen objected to Patrick's claim he owned half of the firm.  She asserted Patrick's supposed stock certificate was intentionally altered, and their father Joseph was the sole owner of the law firm at the time of his death.

Before Patrick's claim of ownership of G&B was adjudicated, he filed a creditor's claim against Joseph's estate and Gail's estate for $800,000, alleging, inter alia, (1) "[t]he assets of [G&B] . . . was allowed to be dissipated in breach of trust and fiduciary duties owed to the owners of [G&B], or otherwise[] allowed to be converted to the use of  [Joe] Galligan and others"; (2) Joseph Galligan under the influence of Joe Galligan had caused

2

Patrick to contribute over $200,000 to G&B "which was thereafter unjustly taken and used for the benefit of [Joe] Galligan, by the use of fraud and deceit, in that they failed to disclose that they would not recognize Patrick Galligan's ownership interest in [G&B], or that [Joe] Galligan otherwise controlled [G&B] . . ."; and (3) Joe and Maureen exercised undue influence over their parents causing two of their brothers to be disinherited.

On May 6, 2011, with the trustee's petition for instructions still pending, Patrick filed a separate civil lawsuit (case No. CIV 505394) against the Trust, alleging Joe and Maureen had committed intentional torts resulting in financial losses to him, G&B, and his parents' estates, as particularly described in the earlier-served creditor's claims, which Patrick attached to his complaint and expressly incorporated by reference.

B.  *The 2011 Settlement Agreement*

Subject to the approval of the trial court after a noticed hearing, the trustee and Patrick negotiated and executed a settlement agreement and release in May 2011, under which Patrick would receive full ownership of G&B and a $30,000 cash payment in return for his very broad release of all claims he had—known or unknown, disclosed or undisclosed, suspected or unsuspected—against, inter alia, the Trust, the trustee, and the Trust beneficiaries "arising out of or in any way related to agreements, relationships, events, acts or conduct of, between or among the parties, including, but not limited to matters expressed or implied in or in any way related to the matters described herein, including, but not limited to, the Trustee's acts as trustee of the Trust, the allegations of the pleadings referred to herein, or anything directly or indirectly related thereto, and any claims between or among any of the parties arising from or relating to the administration and distribution of the Trust, Joseph's estate, Gail's estate, and G&B, and any property of or entitlement or rights to or under the Trust, Joseph's estate, Gail's estate, and G&B." [2]

---

[2] For the express purpose of "clarify[ing] the scope of this Agreement and the releases provided herein," the agreement included and incorporated 20 paragraphs of recitals concerning the Trust, the beneficiaries, the dispute over the ownership of G&B, and the filing and allegations of Patrick's creditor's claim and civil action (case No. CIV 505394).

By amendment to the petition for instructions, the trustee submitted the proposed settlement to the trial court for approval. On June 6, 2011, the beneficiaries filed an objection to the amendment to the petition for instructions, requesting specified changes. Insofar as relevant here, they asked for language to be added to the release to prevent G&B, a separate legal entity to be controlled by Patrick, from litigating any of the issues covered by the release against the beneficiaries. The beneficiaries insisted on such language as a condition for their approval of the settlement: "Unless and until Patrick and the Trustee both agree that G&B is bound by the same terms and conditions of the proposed settlement agreement, this proposal will not be acceptable to the beneficiaries of the Trust." The beneficiaries proposed that the release provision of the settlement agreement, paragraph 26, be amended to include wording to the effect that Patrick, *on behalf of G&B as well as himself*, was accepting the provisions concerning ownership of G&B in full satisfaction of any claims he might have, and was also releasing the claims described in paragraph 26 *on behalf of himself and G&B*.

After the beneficiaries' proposed language was added to paragraph 26, and other changes were made, Patrick and the trustee resubmitted their agreement to the court, this time without objection. Before issuing its order approving the settlement agreement, the trial court required all the beneficiaries to confirm their approval by signing the agreement in its final form along with Patrick and the trustee, affirming they approved the agreement as to form and content.

The final settlement agreement included the following relevant paragraphs, italicized to highlight pertinent language added to the final agreement before it was approved by the parties, the Trust beneficiaries, and the court:

"23. The Parties agree that the Trust has a 50% ownership interest in G&B and Patrick has a 50% ownership interest in G&B.

"24. With respect to G&B, the Parties agree to the following, which will be completed within a reasonable time after court approval:

4

"a.  The Trustee will distribute to Patrick the Trust's 50% ownership interest in G&B and Patrick will be responsible for all G&B expenses as of the date of this agreement.

"b.  The Trustee will deliver to Patrick all G&B files and records in the possession of the Trustee or its agents.

"c.  The Trustee will transfer to Patrick the G&B bank account and the balance remaining therein after payment of all legal and other expenses incurred to transfer the Trust's G&B shares and deliver the G&B files and records to Patrick.  Patrick waives an accounting of the G&B bank account.  The Trustee will make an additional cash payment to Patrick of the amount necessary to make a total cash distribution to Patrick of Thirty Thousand Dollars ($30,000).

"d.  *The Trustee hereby assigns all other rights and assets of G&B, if any there are, to Patrick*[.]

"25.  Patrick agrees to dismiss Patrick's Civil Action with prejudice within 5 days after court approval.

"26.  Patrick *for himself and on behalf of G & B,* hereby agrees and acknowledges that the provisions of paragraphs 23, 24 and 25 above are in full satisfaction of any and all claims he has against the Trustee, the Trust, the beneficiaries of the Trust, the executor of Joseph's Will, Joseph's estate, Joseph's heirs, the executor of Gail's Will, Gail's estate, Gail's heirs, G&B, the shareholders of G&B, the officers, directors and employees of G&B, Galligan, Thompson, & Flocas LLP, the partners and employees of Galligan, Thompson, & Flocas LLP, Galligan Professional Building, the employees of Galligan Professional Building, the heirs, successors and assigns of each of the foregoing, and the counsel and advisors of each of the foregoing.  In consideration of the terms, conditions, and covenants contained herein, and effective upon this Agreement becoming effective, Patrick, for himself *and on behalf of G & B, and for himself* and for and on behalf of each of his successors, heirs and assigns, hereby releases, acquits and forever discharges the Trustee, the Trust, the beneficiaries of the Trust, the executor of Joseph's Will, Joseph's estate, Joseph's heirs, the executor of Gail's Will, Gail's estate,

5

Gail's heirs, G&B, the shareholders of G&B, the officers, directors and employees of G&B, Galligan, Thompson, & Flocas LLP, the partners and employees of Galligan, Thompson, & Flocas LLP, Galligan Professional Building, the partners and employees of Galligan Professional Building, the heirs, successors and assigns of each of the foregoing, and the counsel and advisors of each of the foregoing, from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, relationships, events, acts or conduct of, between or among the parties, including, but not limited to matters expressed or implied in or in any way related to the matters described herein, including, but not limited to, the Trustee's acts as trustee of the Trust, the allegations of the pleadings referred to herein, or anything directly or indirectly related thereto, and any claims between or among any of the parties arising from or relating to the administration and distribution of the Trust, Joseph's estate, Gail's estate, and G&B, and any property of or entitlement or rights to or under the Trust, Joseph's estate, Gail's estate, and G&B.

"[¶] . . . [¶]

"35. In the event that either of the Parties commences any action or proceeding before any tribunal against the other party to enforce or interpret any provision of this Agreement or is required to defend any such action or proceeding based on, arising from, or related to this Agreement, the prevailing party shall be entitled to recover his or her attorneys' fees and costs incurred." (Italics added.)

## C. *The Present Litigation*

G&B, represented by Patrick, sued Joe and Maureen in November 2011, alleging defendants diverted property and money belonging to G&B from and after January 2007, by tortious means, and interfered with G&B's prospective economic advantages for purposes of destroying the business. The operative first amended complaint alleged causes of action for (1) common counts (money, goods, client files, and other assets of G&B taken by defendants and not returned after demand); (2) fraudulent concealment (of

6

books, bank statements, records, and activities of G&B which would have disclosed defendants were wrongfully diverting G&B funds to themselves from and after November 2008); (3) conversion of personal property (including cash, client fees, computer goods and accessories, computer disks, law books, banking and brokerage statements, corporate files, books and records, client files, and miscellaneous office equipment from and after November 2008); (4) conversion/embezzlement of funds for personal use (by means of fraudulent alteration or forgeries, and writing of checks drawn on G&B's accounts, occurring between November 2008 and December 2010); (5) constructive fraud (diverting G&B funds for personal use by, inter alia, forging checks, charging business credit cards for personal expenses, removing tangible property, and diverting clients and cases to others or themselves, prior to July 2010, when G&B learned the true facts); and (6) intentional interference with contractual relations (including diversion of G&B funds in trustee accounts, and hiding or destroying client files and mail, occurring between 2006 and December 2010).

Joe and Maureen moved for summary judgment in December 2012, asserting the 2011 settlement agreement barred all of G&B's claims. The trial court granted the motion, finding the settlement agreement and release afforded the defendants a complete defense in this action.

Joe and Maureen thereafter moved for an award of $112,646.25 in contractual attorney fees against G&B, citing evidence that G&B was bound by the fee clause in the settlement agreement as Patrick's alter ego, and that Joe and Maureen were entitled to fees as de facto parties to the settlement agreement or third party beneficiaries of it. The trial court granted the amount requested in full, and specified that "the fee award may be made jointly and severally" against G&B and Patrick on the grounds that G&B was Patrick's alter ego.

Judgment in favor of Joe and Maureen was entered on April 11, 2013, and this timely appeal followed.

## II.  DISCUSSION

G&B contends the trial court erred in finding the settlement agreement released the claims asserted in its first amended complaint.  With regard to the attorney fee award, G&B contends (1) the trial judge was properly challenged by G&B under Code of Civil Procedure section 170.6 after deciding the summary judgment motion and should not have heard or ruled on defendants' motion for fees, (2) there was no contractual or legal basis for the fee award granted, (3) the finding and order that Patrick is jointly and severally liable were entered without proper notice to Patrick, and (4) the fee award was excessive and unreasonable.

### A.  *Summary Judgment Ruling*

On appeal we review de novo an order granting summary judgment.  (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1443.)  " ' "A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action.  [Citations.]  The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense.  [Citations.]  Despite the shifting burdens of production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted." ' "  (*Ibid.*)

Summary judgment is appropriate when a settlement agreement and release forecloses claims coming within its scope.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159.)  The release in this case was extremely broad in scope.  It released a sweeping array of potential claims that could be made against the "beneficiaries of the Trust" as well as against the "officers, directors and employees of G&B," both categories which would unambiguously include Joe and Maureen.  The claims released included "any and all claims . . . of every kind and nature . . . , known and unknown, suspected and unsuspected, disclosed and undisclosed, . . . in any way related to . . . the allegations of the pleadings referred to herein . . . , and any claims between or among any of the parties arising from or relating to the administration and distribution of the Trust . . . and G&B,

8

and any property of or entitlement or rights to or under the Trust, Joseph's estate, Gail's estate, and G&B." The types of claims asserted in the first amended complaint do come within this description in multiple respects. They echo, enlarge upon, and directly relate to "the allegations of the pleadings" in case No. CIV 505394 that are referenced in paragraph 26. They are also claims "arising from or relating to the administration . . . of . . . G&B," and involve "entitlement or rights" pertaining to G&B. The only arguable issue in this case is whether the release unambiguously included claims *by G&B* or whether certain language in paragraphs 24.d. and 26 created an ambiguity requiring resort to assertedly conflicting extrinsic evidence of the parties' intent to bar claims by G&B.

As part of their motion for summary judgment, defendants sought and obtained judicial notice of the initial and final versions of the settlement agreement, and of the beneficiaries' objection to the initial version of paragraph 26 on the grounds that it did not preclude G&B from filing suit against them. This evidence showed (1) the beneficiaries openly and expressly conditioned their approval of the settlement on G&B being bound by the release and acknowledgement of satisfaction of claims to the same extent as Patrick, and (2) the language they proposed to accomplish that result was added to the agreement and accepted by Patrick without apparent objection. The final settlement agreement does in fact provide that Patrick "for himself and on behalf of G & B" agreed to accept the provisions concerning ownership of G&B in full satisfaction of any and all claims he had against defendants and agreed to release them from any claims, known or unknown, in any way related to the allegations made in Patrick's creditor's claim or to the administration of G&B. Taken together, this evidence was sufficient to shift to G&B the burden of establishing there was any triable issue of material fact concerning whether the settlement agreement provided a complete defense to its first amended complaint.

As an initial matter, we reject G&B's assertion the release was limited to Patrick's claims against the trustee and beneficiaries. G&B cites wording in the first sentence of paragraph 26 stating the transfer of the Trust's interest in G&B to Patrick is in "full satisfaction of any and all claims *he has* against the Trustee, the Trust, the beneficiaries

9

of the Trust . . . ." (Italics added.) G&B then asserts without substantiation that the general release that follows in the second sentence of paragraph 26 "has a similar limitation." Not so. Even assuming the "he has" language in the first sentence was not simply an inadvertent grammatical construction error that was overlooked when the words "for himself and on behalf of G & B" were added to the sentence, the release language in the second sentence contains no language arguably limiting it to claims by Patrick. By its own terms, the second sentence releases any claims Patrick or G&B might assert against the Trust, the beneficiaries of the Trust, or the officers, directors, or employees of G&B (among other releasees), pertaining in any way to G&B or to the allegations in Patrick's creditor's claim. As we read it, the release language in the second sentence of paragraph 26 applies unambiguously to all of the claims G&B makes in the first amended complaint without regard to any purported ambiguity in the drafting of the first sentence of the paragraph.

G&B further claims the language added by paragraph 24.d. to the final agreement—"Trustee hereby assigns all other rights and assets of G&B, if any there are, to Patrick"—independently creates ambiguity as to the scope of the release. He maintains this provision "implies" that whatever rights *he* was foregoing, the parties to the settlement intended to preserve *G&B*'s rights against defendants. We do not agree, and we find no conflict or ambiguity created by the language of paragraph 24.d.

First, the phrase "other rights and assets of G&B" apparently refers to such other rights and assets as G&B *might* have had in addition to those specified in subparagraphs b. and c. of paragraph 24 (the files and records in the Trustee's possession, and a right to a portion of the G&B bank account remaining after payment of specified expenses). The phrase does not affirm any such rights or assets actually exist, or specify what they might be. What we can say, however, is whatever "other" rights or assets G&B had could not have included rights it had lost (due, for example to the passage of time) or rights it had given up (by express waiver, settlement and release, or otherwise). The right to pursue defendants on behalf of G&B for money, assets, records or anything else—if it had ever existed—was one such right. Under paragraph 26, Patrick expressly

agreed on behalf of himself and G&B to "release[], acquit[] and forever discharge[]" defendants from claims pertaining to G&B. This *extinguished* any such right G&B might have had against defendants. Thus, whatever else paragraph 24.d. refers to, it does not include any right to make claims or demands on defendants or the other persons or entities mentioned in the release pertaining to G&B (or to many other matters). We therefore reject G&B's claim that paragraph 24.d. "appears, on its face, to preserve G&B's right to pursue [defendants]." (Italics omitted.)

Second, G&B failed to come forward with any evidence showing its current interpretation of paragraph 24.d. or paragraph 26 was communicated to the trustee, the beneficiaries, or the court at any time before the parties all signed off on the agreement. Given the clarity of the beneficiaries' insistence that the settlement bind both Patrick and G&B equally, and preclude any further litigation against them by either, it is plain no such communication could have occurred—or the beneficiaries most certainly would not have signed off on the settlement agreement. Patrick's unexpressed intentions are immaterial to the interpretation of the settlement agreement. Mutual assent to a settlement agreement is determined from the reasonable meaning of the words and acts of the parties, not from their unexpressed intentions or understanding. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810–811.)

Finally, G&B points to an e-mail Joe sent to Patrick before the settlement agreement was finalized in which Joe states: "You want to agree that you won't come after Maureen and me, but you won't agree that [G&B] can't come after us, and you won't agree that you can't participate in turning over [G&B] information. [¶] Go to court tomorrow with your stock certificate and prove you own it and you don't need an agreement." If anything, the e-mail merely serves to confirm the position taken by Joe and the other beneficiaries in their objection to the initial agreement—the agreement either had to preclude suit by G&B as well as Patrick or there would be no agreement and Patrick would have to prove his asserted ownership of G&B in court. Whatever else it

11

may show, the e-mail does not establish the settlement agreement reflects a mutual intention to preserve G&B's right to sue defendants.[3]

Based on our de novo review of the record, we find the trial court properly determined the 2011 settlement agreement and release barred this action, and properly granted summary judgment to defendants.

**B.** *Attorney Fee Award*

**1.** *Peremptory Challenge*

After the trial court ruled on defendants' summary judgment motion but before it heard their motion for attorney fees, G&B filed a peremptory challenge under Code of Civil Procedure section 170.6 to disqualify Judge Bergeron from adjudicating the fee motion. Judge Bergeron denied the challenge as untimely. G&B did not challenge the ruling by writ of mandate. Its present challenge is not cognizable on this appeal: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." (Code Civ. Proc., § 170.3, subd. (d); see also *People v. Hull* (1991) 1 Cal.4th 266, 270 [denial of a disqualification motion is neither directly appealable nor reviewable on appeal from the subsequent judgment].)

**2.** *Contractual Basis for Award*

The settlement agreement included the following relevant provisions: "34. Except as otherwise provided in this Agreement, each of the Parties is responsible for the payment of his or her own attorneys' fees and costs. [¶] 35. In the event that either of the Parties commences an action or proceeding before any tribunal against the other party to enforce or interpret any provision of this Agreement or is required to defend any such action or proceeding based on, arising from, or related to this Agreement, the prevailing party shall be entitled to recover his or her attorneys' fees and costs incurred."

---

[3] We also find no support in the record for G&B's claim that its sixth cause of action alleges tortious conduct by defendants after the settlement agreement became effective.

On appeal, a determination of the legal basis for an attorney fee award is reviewed de novo as a question of law. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 (*Sessions*).)

"Attorney fees are not recoverable as costs unless expressly authorized by statute or contract. [Citations.] Where a contract specifically provides for an award of attorney fees incurred to enforce the provisions of the contract, the prevailing party in an action on the contract is entitled to reasonable attorney fees. (Civ. Code, § 1717, subd. (a);[4] [citation].) . . . As a general rule, attorney fees are awarded only when the action involves a claim covered by a contractual attorney fee provision and the lawsuit is between signatories to the contract." (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 379–380 (*RPS*).) However, cases in which a nonsignatory to a contract was permitted to recover, or was found liable for, attorney fees have involved a nonsignatory who was (1) an alter ego, assignee, or guarantor of a signatory, or (2) a third party beneficiary of the contract. (See *Wilson's Heating & Air Conditioning v. Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1332–1333, fns. 6, 7; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1505–1506.) In such cases, it must be shown the prevailing party, whether a signatory or nonsignatory, would have been liable to his or her opponent for fees had the opposing party prevailed. (*Loduca v. Polyzos* (2007) 153 Cal.App.4th 334, 340–341 (*Loduca*); *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 896–897 (*Blickman*).)

As an initial matter, we find that defendants' assertion of an affirmative defense to the action based on the settlement agreement did constitute the commencement of a proceeding to enforce or interpret the settlement agreement for purposes of paragraph 35. The prevailing party on such defense would be contractually entitled to recover attorney

---

[4] "Civil Code section 1717, subdivision (a) [provides in pertinent part]: 'In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . .' "

fees and costs incurred in litigating it *if* both the defendants and G&B would be entitled to the benefit of paragraph 35 if they prevailed, either as "Parties" to it or on some other legally recognized basis. Because we find defendants are not in fact "Parties" under paragraph 35 and are not otherwise subject to its provisions, they are not entitled to enforce it against G&B.[5]

Defendants maintain they are either "de facto" parties to the settlement agreement or third party beneficiaries of the agreement entitled to the benefit of paragraph 35. G&B concedes defendants may have been third party beneficiaries of the settlement agreement, but denies they must be considered parties to the agreement. We find it is immaterial whether defendants are considered parties or third party beneficiaries. In either case, the attorney fee clause by its own terms does not afford them any contractual right to prevailing party fees.

The opening paragraph of the settlement agreement states in relevant part: "This Settlement Agreement and Release ('Agreement') is between Bruce L. Van Alstyne, as Trustee of the Joseph A. Galligan and Gail M. Galligan Living Trust u/t/a dated October 29, 2008 (the 'Trustee'), and Patrick T. Galligan ('Patrick') (collectively sometimes referred to in this Agreement as the 'Parties') . . . ." The attorney fee clause in paragraph 35 of the agreement states that it applies whenever "either of the Parties" commences an action or proceeding of a type triggering its application "against the other party." In other words, the attorney fee clause by its own terms does not apply unless one of the two "Parties" as defined in the opening paragraph—the "Trustee" or "Patrick"— commences a proceeding against the other. Even if we assume for purposes of analysis that the probate court's insistence on the beneficiaries approving the settlement effectively made them parties to it, they would still not be "Parties" as defined in the agreement and therefore paragraph 35 confers no rights on them, whatever other provisions of the contract might apply to them.

---

[5] We assume for purposes of our analysis that G&B is in fact an alter ego of Patrick and would therefore be treated as a party to the settlement agreement.

14

The same analysis applies if defendants are assumed to be third party beneficiaries of the settlement agreement. The release clause of the agreement, paragraph 26, names the beneficiaries and releases them from liability to Patrick or G&B. Given its text and the extrinsic evidence discussed *ante* concerning the beneficiaries' objection to the initial version of the paragraph it is clear that defendants were intended beneficiaries of paragraph 26. But that does not necessarily confer rights on them under paragraph 35. That depends on the text of the paragraph which, as we have posited, appears to confer rights only on the trustee and Patrick. *Blickman*, *supra*, 162 Cal.App.4th 858 is illustrative on this point.

*Blickman* involved an attorney fee clause that allowed fees in " 'any litigation *between the parties hereto* to enforce any provision of this Agreement . . . .' " (*Blickman*, *supra*, 162 Cal.App.4th at p. 896.) The plaintiff, BT Commercial Real Estate (BTC), which represented the lessees in a commercial lease transaction, sued the lessor Mozart Development Co. (Mozart) for unpaid commissions after the leases were terminated prematurely, contending it was a third party beneficiary of a commission agreement between Mozart and the listing broker, Commercial Property Services (CPS). (*Id.* at pp. 864–866.) Mozart cross-complained against BTC for failure to disclose information concerning the lessees' precarious financial condition. (*Id.* at pp. 865–866.) BTC successfully demurred to the cross-complaint. (*Id.* at p. 866.) Mozart thereafter prevailed against BTC on the complaint and unsuccessfully sought attorney fees incurred in opposing BTC's complaint based on BTC's claim that it was a third party beneficiary of the commission agreement containing the attorney fee clause quoted above. (*Id.* at pp. 866, 893.) Mozart had argued that BTC would have been entitled to fees as a third party beneficiary had it prevailed on its complaint and therefore, since Mozart prevailed instead, Mozart was entitled to its fees under Civil Code section 1717. (*Blickman*, at p. 893.) BTC contended Mozart had no right to recover against a nonparty to the commission agreement unless that party would itself have been entitled to fees had it prevailed; and had BTC prevailed on the complaint it would not have been entitled to

15

fees because the fee clause in issue "did not manifest an intent to extend the right to fees to third parties." (*Ibid.*)

The Court of Appeal agreed with BTC's position, and affirmed the denial of fees to Mozart. The court held: "By its plain terms, the italicized phrase ['between the parties hereto'] limits fees to litigation between the signatories, Mozart and its broker CPS. It does not appear that CPS was ever a party to either BTC's action or Mozart's cross-action. On the face of it, therefore, no part of this proceeding constituted 'litigation between the parties hereto,' and no part of it fell within the fee clause. It follows that neither party could assert a right to fees under [Civil Code] section 1717[, subdivision] (a)." (*Blickman*, *supra*, 162 Cal.App.4th at p. 896.) The court found this holding was "supported by a sizeable body of case law." (*Ibid.*)

*Blickman* relied in part on *Sessions*, *supra*, 84 Cal.App.4th at pages 679–681, which held that a third party beneficiary of a contract could not recover fees under a fee clause that applied only to litigation initiated by " '*either party* to enforce the provisions of this Agreement.' " (Italics added by *Sessions*.) As *Sessions* notes at page 680, the underlying contractual principle was stated in *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 944: "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.] As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler. Permitting a third party to enforce a covenant made solely to benefit others would lead to the anomaly of granting him a bonus after his receiving all intended benefit."[6]

_____

[6] In *RPS*, *supra*, 25 Cal.App.4th 375, a Second District panel reversed an order denying attorney fees under a fee clause in a lease agreement that allowed fees to the prevailing party " '[i]n the event of any action . . . by either party against the other under this Lease.' " (*Id.* at pp. 377–378.) Without discussing the language of the clause limiting recovery to actions *between the parties*, the court held that the lessor was entitled to fees for prevailing against a third party beneficiary/sublessee of the lease because "[w]here there is a sufficient nexus between the lessor and sublessee, a nonsignatory

16

In *Loduca*, *supra*, 153 Cal.App.4th at pages 342–343, the court found that an attorney fee clause awarding fees to the prevailing party " '[i]f a court action is brought' " on the contract would support an award to a third party beneficiary of the contract, since the language imposed no limitation on third party rights. (See also *Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 970 [fee clause allowing fees to " 'any party' " as well as other provisions of the agreement show intent to extend the benefit of the fee clause to third party creditors].) The fee clause in this case, by contrast, shows no intent to benefit any person other than Patrick or the trustee in any litigation between them to enforce or interpret the settlement agreement.

Here, defendants obtained the benefit of the release provided in paragraph 26 by asserting it to obtain summary judgment against G&B. Had they wished to protect themselves further they could have insisted as a condition for their approval of the settlement agreement that paragraph 35 be broadened to ensure their entitlement to attorney fees should Patrick or G&B file an action in violation of the release. Nothing in the record shows such a request was made or considered by the parties. However important the right to attorney fees might be to defendants' purpose in protecting themselves from litigation brought in violation of the release, this court cannot remake the settlement agreement to provide them with rights not reflected in the language of the agreement. The right to attorney fees is not implied by law into every contractual release.

For these reasons, we reverse the award of attorney fees against G&B and Patrick.

### III. DISPOSITION

The judgment is reversed and the matter is remanded for entry of a new judgment in favor of defendants, modified to eliminate any attorney fee award to them as the prevailing parties. Each side shall bear its own costs on appeal.

---

sublessee is entitled to enforce an attorney fee provision in the lease as a third party beneficiary against a signatory landlord." (*Id.* at pp. 382–384.) Since the issue of the intent of the contracting parties to allow attorney fees in actions not brought by "either party against the other" was not argued or considered in *RPS*, we do not find it persuasive in the case before us. (Cf. *Blickman*, *supra*, 162 Cal.App.4th at p. 900 [*RPS* is only authority for points actually involved and decided].)

_____

Margulies, Acting P.J.

We concur:


_____

Dondero, J.


_____

Becton, J.[*]


_____

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


18